UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHOENIX TECHNOLOGIES LTD., <br> Plaintiff, <br> v. <br> VMWARE, INC., <br> Defendant. | Case No. 15-cv-01414-HSG <br><br> **ORDER GRANTING DEFENDANT'S SECOND MOTION IN LIMINE** <br><br> Re: Dkt. No. 187 |

Pending before the Court is Defendant VMware, Inc.'s ("VMware") second *motion in limine* seeking to preclude Plaintiff Phoenix Technologies, Inc. ("Phoenix") from introducing evidence or argument that "(1) [] departs from its contention, throughout the case, that both VMware's ESX and ESXi products infringe Phoenix's copyrights, or (2) [] the removal of the Linux [operating system] from ESX to create ESXi introduced a 'new' infringing feature in ESXi." Dkt. No. 187 at 5. Phoenix opposes. Dkt. No. 19. Having carefully considered the papers filed in connection with this motion and oral arguments made by the parties at the pretrial conference and a subsequent telephonic conference, the Court **GRANTS** VMware's *motion in limine* for the reasons set forth below.

**I. HISTORY**

To clarify the basis for VMware's motion, the Court first recounts Phoenix's shifting characterization of its theory of infringement.

Phoenix filed its complaint on March 27, 2015, alleging that several VMware products infringed Phoenix's copyright in four ways. *See* Dkt. No. 1. Specifically, Phoenix alleged that

> VMware's unauthorized and infringing [u]ses include, but are not limited to, its [u]se of the 440BX Program (or derivatives thereof) in VMware

vSphere, VMware ESX, VMware ESXi, GSX Server, VMware Server and other VMware products that incorporate these technologies (the "Infringing Products"). VMware introduced the different Infringing Products at different points in time beginning no later than 2001. These Infringing Products violate the MLA for at least the following reasons:

(a) They are not "Licensee's Products" because they are designed to run on servers instead of "standard PC platforms;"

(b) Certain VMware server products are not "Licensee's Products" because they operate with their own host kernel, without a host operating system, and are thus not compatible with "standard PC operating systems;"

(c) They support processors other than the Intel Pentium processor, in violation of the limitation set forth in the MLA;

(d) They support multiple processors beyond the limitation of two processors as set forth in the MLA.

*Id.* ¶ 68.

VMware then propounded an interrogatory asking Phoenix to "[i]dentify each [VMware] product that [Phoenix] contend[ed] infringe[d] [Phoenix's] copyright and for which [Phoenix] [sought] damages." Dkt. No. 295-7 at 5. In response, on April 13, 2016, Phoenix identified VMware's GSX Server, VMware Server, ESX, and ESXi products, and stated that they each infringed through the "[u]nlicensed use of [Phoenix] BIOS beyond the terms of the MLA and its amendments, as set forth in the Complaint." *Id.* at 6-7. Phoenix's response further stated that "the basis for [Phoenix's] contention that each product or product version infringes involves expert issues that will be the subject of the reports of Phoenix's experts. Phoenix incorporates by reference all such expert reports and testimony." *Id.* at 7. At the time of this response, of course, there were not yet any expert reports to incorporate.

On May 13, 2016, fourteen days after the close of fact discovery,[1] two Phoenix experts, Dr. Nathaniel Polish and Dr. Robert Zeidman, filed reports noting a distinction between ESX and ESXi not alleged in Phoenix's complaint. Dkt. Nos. 120-4 ¶¶ 60-65, 122-2 ¶ 67. For example, Dr. Polish stated that ESXi's "removal of the Linux OS Service Console further demonstrates that

---

[1] On April 11, 2016, the parties stipulated to an extension of the expert disclosure deadlines "to allow the completion of fact discovery in this matter." Dkt. No. 89 at 1.

ESXi neither installs on nor operates with any standard PC operating system." Dkt. No. 122-2 ¶ 67. Dr. Zeidman stated that "VMware's ESXi product functions entirely independently of any standard operating system, let alone a standard PC operating system, as that term is defined by Dr. [] Polish . . . [because] VMware's ESX product is also installed on physical servers without a standard operating system, but incorporates and relies upon a Linux-based operating system to launch," while "ESXi eliminates this use of Linux and therefore operates without the use of any standard operating system." Dkt. No. 120-4 ¶ 65. Similarly, Phoenix's damages expert, Dr. Matthew Lynde, testified that for purposes of drafting his expert report he "was asked to assume" that ESXi was the infringing product, rather than ESX, and that "[i]f [he] were asked to assume that ESX were in breach of the [] license agreement [as well], that would require further economic analysis." Dkt. No. 193-11 at 10:15, 14:16-19.

Thereafter, in Phoenix's June 6, 2016 Second Supplemental Responses and Objections to VMware's Interrogatory Nos. 7-10, Phoenix stated that while it "[did] not concede that other VMware products comply with the [Master License Agreement ("MLA")] (as defined in the Complaint), it [would] not seek hypothetical license damages in connection with VMware products other than the ESXi products based on [] information made available to Phoenix in discovery." Dkt. No. 130-1 at 4:2-5. Instead, Phoenix stated that it intended to seek damages specifically relating to VMware's infringing use of the Phoenix BIOS in VMware's ESXi products, because those products "(1) run on servers instead of 'standard PC platforms'"; (2) "operate with their own host kernel, without a host operating system, and are thus not compatible with 'standard PC operating systems'"; (3) "support multiple processors beyond the limitation of two processors"; and (4) require the Phoenix BIOS to "interact[] with a virtual chipset that is not a 440BX chipset." *Id.* at 4:26-5:5 (internal quotation marks omitted). Three weeks later, Dr. Lynde submitted a Sur-Rebuttal Expert Report stating that "[t]he 2005 and 2006 dates that [VMware's damages expert] assumes as the dates of the hypothetical negotiation are unsupported and predate the sale of ESXi, the first accused product, by at least 18 months." Dkt. No. 215-20 at 5.

On July 22, 2016, Phoenix filed a motion for summary judgment arguing, in part, that

3

VMware's "ESXi software violates [the MLA] licensing restriction" because the MLA's definition of "'Licensee's Products' can only be construed in one way: the hardware platform on which ESXi runs must have a standard PC operating system.'" Dkt. No. 121 at 16:6-9. Phoenix reasoned that because "ESXi, in contrast to prior versions of [VMware's] software, 'operates independently from any general-purpose operating system [("OS")],'" there was "no room for doubt that the ESXi products violate the 'Licensee's Products' restriction . . . ." *Id.* at 16:13-20. Phoenix further stated that ESXi's removal of the general purpose Linux OS that was incorporated into ESX constituted a "significant departure from its prior technology." *Id.* at 9:22.

On August 26, 2016, Phoenix opposed VMware's cross-motion for summary judgment, arguing that VMware "misleadingly conflate[d] [the] ESX and ESXi products, referring to them jointly as 'ESX/ESXi' in its Motion, [when] VMware's own marketing materials demonstrate[d] these products [were] markedly different." Dkt. No. 212 at 7:3-5. Instead, Phoenix argued that ESXi was the "only product at issue here." *Id.* at 6:20. Furthermore, Phoenix stated that "[t]he only component of VMware's earlier products[, such as ESX,] that conceivably constituted a 'standard PC operating system' was the Linux operating system in the service console of the software," which VMware removed from ESXi, thereby "eliminat[ing] any colorable claim that the ESXi software runs on 'platforms with a standard PC operating system' and introduc[ing] *new grounds for finding infringement*." *Id*. at 9:2-6, 9:8-10 (emphasis added).

On September 16, 2016, Phoenix filed a reply in support of its motion for summary judgment, again arguing that VMware's ESX and ESXi products were "markedly" different "in that [ESXi] eliminated all reliance on a general purpose operating system." Dkt. No. 158 at 1 n.2. Phoenix therefore contended that VMware's opposition to its motion for summary judgment, in which VMware argued that Phoenix's claims were barred by the doctrines of copyright estoppel and waiver, Dkt. No. 216 at 24-25, "misleadingly conflate[d] ESXi with [ESX], and refer[red] to them jointly as "ESX/ESXi" so that it [could] exaggerate the extent of its purported defenses," Dkt. No. 158 at 1 n.2.

On November 10, 2016, the Court held a hearing on the parties' cross motions for summary judgment. *See* Dkt. No. 207. At the hearing, Phoenix represented that: (1) ESX's

4

inclusion of a Linux-based OS constituted a "very material" difference "from the ESXi product, which the Defense admits had no operating system at all at the level of the hardware platform," Dkt. No. 205 at 5:19-25; and (2) the ESX and ESXi products are "fundamental[ly] differen[t]" because "ESX arguably has an operating system; ESXi does not," *id.* at 8:17-18. Phoenix therefore stated that "what we are electing to do is go forward only with the causes of action that we have on the merits as to ESXi, and damages as to ESXi." *Id.* at 8:19-21.

On October 21, 2016, each party filed a *motion in limine* seeking to exclude the expert opinions of the other party's damages expert for being based on the wrong hypothetical negotiation date. *See* Dkt. Nos. 291, 294. In its *motion in limine*, VMware argued that Phoenix's expert Dr. Lynde "selected a legally erroneous date for his hypothetical negotiation, which led to an artificially inflated hypothetical royalty," because "[a]ccording to Phoenix's complaint and its sworn interrogatory responses, VMware first allegedly exceeded the MLA by using the BIOS in server products, like GSX, beginning in 2001, and in 'bare metal' server products, like ESX, beginning in 2002." Dkt. No. 294 at 2:8-9, 2:25-3:1. In contrast, Phoenix argued in its third *motion in limine* that the correct hypothetical negotiation date was the date when the "infringing distributions of ESXi began in 2008," because "the infringements at issue involve VMware's unauthorized use of Phoenix's BIOS program in ESXi." Dkt. No. 291 at 1:21-2:1 & 1 n.1. Plaintiff further stated:

> Phoenix's complaint initially identified additional products as infringing. Phoenix has narrowed its claims to ESXi because the infringing nature of ESXi can be established based on VMware's own statements about the unique characteristics of the software . . . . Phoenix clarified this narrowing of its claims in amended discovery responses, and Phoenix's expert report on damages relates only to ESXi. Thus, [VMware's expert] was well aware of the need to appropriately tie her damages opinions to ESXi.

*Id.* at 1 n.1. Phoenix later reiterated its position on this point in its opposition to VMware's third *motion in limine*, stating:

> [VMware's] argument should be rejected because it rests on the false premise that all of the[] [GSX, ESX, and ESXi] VMware products have the same features and infringe in the same way. To the contrary, VMware's own marketing statements confirm that ESXi has a unique feature not present in VMware's earlier

> products—one which supports a distinct theory of infringement and eliminates potential defenses that VMware could have asserted as to GSX and ESX. Under these circumstances, Dr. Lynde properly looked to the date of first infringement for ESXi and not to earlier products that are not at issue and lack the distinct infringing feature of ESXi.

Dkt. No. 238 1:8-15. Phoenix further stated that it "ha[d] narrowed this case to the ESXi products because (1) VMware's infringement in ESXi is ongoing, whereas VMware no longer distributes the other products listed in the Complaint, and (2) ESXi has unique infringing features that will streamline the case for trial and allow Phoenix to prove infringement based on VMware's own statements." *Id.* at 1 n.1; *see also id.* at 2:4-5 ("As compared to VMware's earlier products, ESXi has a distinct feature that supports a distinct theory of infringement."), 3:11-13 ("VMware cites no authority holding that a hypothetical license for an infringing product should be based on a hypothetical negotiation tied to other infringements involving other products that are not at issue and do not share a key infringing feature of the product in dispute.").

On January 17, 2017, Phoenix filed an opposition to VMware's second *motion in limine*, arguing that "Phoenix is entitled to present evidence and argue that ESX and ESXi are materially different (based on the removal of the Linux-based COS) . . . ." *See* Dkt. No. 237 at 5:9-10. Furthermore, Phoenix stated that "VMware argues in its [second *motion in limine*] (and presumably will do so at trial) that Phoenix's knowledge of ESX 'is equally applicable to ESXi.' Phoenix must be permitted to rebut that argument with evidence of further differences between ESXi (which contains no embedded Linux COS) and ESX (which contains the Linux COS)." *Id.* at 4:5-8.

At the February 2, 2017 pretrial conference, the Court questioned Phoenix as to the apparent shift in its theory of infringement, stating that in its view, there was "really a question here as to whether this is a narrowing at all or whether it's an expansion or a shifting of the theory that was the operating basis of the case through at least fact discovery." *See* Dkt. No. 266 at 9:12-15. In response, Phoenix's counsel offered conflicting statements. First, Phoenix stated that

> ESX, because it did not follow Section 1.5 of the Master License Agreement . . . is a copyright infringement and was a breach of contract. ESXi is also a copyright infringement and a breach of contract. . . . On the grounds that, one, [they] do[n't] operate on a standard PC platform; and on the second ground, that [they] [do] not

6

operate . . . on a standard PC platform with a standard operating system. [However,] the mechanics of ESX on the one hand and ESXi on the other hand, of course, are different, and that's been developed through discovery. So we're going to say that ESX violated and that ESXi violated in a different way.

*Id.* at 16:16-17:6. Later, however, counsel had the following exchange with the Court:

> PHOENIX: [W]e're not alleging that [ESXi] violates because it removed the console operating system. If that's what's the obstacle here, that is not our contention. Our contention is ESX violated because it had no operating system compliant with the contract. ESXi violated because it had no operating system compliant with the contract. That's what our complaint says.
>
> COURT: But then, as I understand it, the dispute about when the hypothetical license negotiation ought to happen, for example, is that you're saying you've got to push it out to when ESXi existed because ESXi made this change that is somehow significant, aren't you?
>
> PHOENIX: No. We're saying that to start then because that's the product for which we're claiming damages. That's the product that began to infringe in its own way at that time.
>
> COURT: Right. It began to infringe in a different way than ESX. Because if it infringed in the same way as ESX, then that distinction you're drawing doesn't make any sense.
>
> PHOENIX: Well, they are different products and the mechanics of them are different. The one we've chosen to proceed on is the latter one, still being used today, for which we have calculated the royalty beginning date. That doesn't change the fact that they both violate in the same core way. We have just chosen to narrow the case by focusing on one product. . . . if [VMware] want[s] to say that ESX did not infringe and because ESX did not infringe, ESXi does not infringe either, they're entitled to make that point. If they want to say Phoenix knew about the ESX operation and it's not really different than the ESXi mechanics and they knew about it, they may make that argument.
>
> . . .
>
> COURT: So . . . I understand you're saying that ESXi has been in the case from the beginning, and you are saying that the complaint doesn't have to be so granular as to cover the Linux theory; right? So you're acknowledging that the complaint doesn't have that theory in it. You're just saying you're not required to do that as a matter of law.
>
> PHOENIX: Correct.

*Id.* at 19:22-21:14, 22:12-18. However, later still, the following exchange occurred:

> COURT: [W]hat interrogatory responses or other contention

>documents before the close of fact discovery set out this theory of infringement for ESXi?
>
>PHOENIX: I don't believe there's an interrogatory response that says, "[y]ou, VMware, violated the license agreement because you removed the Linux console operating system." I don't believe there's an interrogatory that says that, nor do I believe there needs to be an interrogatory that says that . . . .

*Id.* at 22:20-23:1.

Finally, on February 14, 2017, the Court held a further telephonic conference, and again addressed this issue, asking Phoenix's counsel if it had previously represented in its opposition to VMware's third *motion in limine* that "there was a distinct theory of infringement as to ESXi." *See* Dkt. No. 275 at 10:3-4 (referencing Dkt. No. 238 1:8-15). In response, counsel stated: "Yes, Your Honor. I'm looking at it right now and that is what we said." *Id.* at 10:21-22. Counsel further stated:

>The reason that the theories are distinct and the issues are distinct for ESXi is really as it relates to VMware's potential defenses. By narrowing the case to ESXi, what we've done is, while maintaining our affirmative theory of infringement, *we've eliminated, we feel, VMware's ability to present certain defenses that it could have, based on the Linux operating system*. . . . And that's why it's a distinct theory as to ESXi and not as to our affirmative theory of infringement but as to the defenses and the totality of the issues that VMware could raise.

*Id.* at 11:10-16, 11:22-25 (emphasis added). The Court thus asked Phoenix when it had "inform[ed] [VMware] before the close of fact discovery about that unique, distinct theory of infringement," to which Phoenix responded: "Well, again, Your Honor, the way we think of it is a narrowing of the case and not as a new affirmative theory but rather as a way to preemptively address defenses that they could raise." *Id.* at 12:15-21.

With this history in mind, the Court now turns to the substance of VMware's motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard," may direct "that

8

designated facts be taken as established for purposes of the action," and/or "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii), 37(c)(1). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1107 (9th Cir. 2001).

In general, under FRCP 26(e), "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).[2]

### III. DISCUSSION

VMware makes two points. First, VMware argues that "Phoenix's infringement theory applies equally to both ESX and ESXi," such that "Phoenix should not be permitted to avoid it by a theory—developed after the close of discovery—that ESXi, but not ESX, infringes Phoenix's copyright." Dkt. No. 187 at 4:3-4, 4:5-7. Second, VMware contends that "Phoenix should also be barred from arguing that the removal of the Linux COS from ESX in creating ESXi represents a 'new infringing feature.'" *Id.* at 4:17-19. The Court agrees with both contentions. However, because Phoenix also appears to agree with the substance of VMware's first contention, the Court will hold Phoenix to its past representations, and will only address VMware's second argument here. *See* Dkt. No. 266 at 25:17-25 ("Our [i.e., Phoenix's] position is [ESX and ESXi] both violate.").

Phoenix's complaint asserts a copyright infringement claim against a group of VMware products that Phoenix characterizes as the "infringing products." Compl. ¶ 68. Phoenix's complaint alleges, without differentiation, that the infringing products infringed Phoenix's

---

[2] The parties do not cite—and the Court is unaware of—any case law in this circuit addressing an analogous situation to the one presented here, where a plaintiff attempts to shift the factual basis of its theory of infringement in a copyright suit after the close of fact discovery.

copyright in four ways. *Id.* Phoenix confirmed in its response to VMware's interrogatories that the products infringed "as set forth in the Complaint." Dkt. No. 295-7 at 6-7. Based on those assertions, VMware proceeded through fact discovery under the impression that—given the grouped allegations against all of the infringing products—it need not explore each and every characteristic of each and every individual product in order to adequately develop its defense. That assumption was reasonable given that it was not until fourteen days after the close of fact discovery that Phoenix intimated for the first time that it intended to assert that ESXi infringed in different or unique ways based on the removal of the Linux OS. *See* Dkt. Nos. 120-4 ¶ 65, 122-2 ¶ 67. Thereafter, and as detailed above, Phoenix has taken a range of positions as to whether ESX and ESXi are "markedly" or "fundamentally" different products because "ESXi has a unique feature not present in VMware's earlier products . . . which supports a distinct theory of infringement," Dkt. Nos. 158 at 1 n.2, 205 at 8:17; 238 1:11-12, or whether the products do, in fact, "both violate in the same core way," Dkt. No. 266 at 20:21-22; *see also Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 544 (N.D. Cal. 2009) (stating that "[t]he orderly case management of complex litigation requires defining the basic contours of the litigation from the outset . . . .") (citing Manual for Complex Litigation (Fourth) § 11.41 (2004) ("Early identification and clarification of issues is essential to discovery control.")).

      VMware contends that Phoenix's development of the "new theory of infringement" after the close of fact discovery left it "without the opportunity to explore and respond [to the theory, thereby] prejudicing VMware's ability to conduct discovery, depose fact witnesses, or have its experts offer fulsome opinions on [it]." Dkt. No. 187 at 5: 11-14 (internal quotation marks omitted). Again, the Court agrees. VMware was not alerted to Phoenix's concededly "new grounds for finding infringement," Dkt. No. 212 at 9:10, until after the close of fact discovery, *see* Dkt. Nos. 120-4 ¶¶ 60-65, 122-2 ¶ 67. Nevertheless, Phoenix contends that VMware was on notice of the possibility that the factual basis for its theory of infringement might shift, because "Phoenix expressly put VMware on notice that the basis of its infringement claim involve[d] expert issues that w[ould] be the subject of its expert reports," and Phoenix "incorporated by reference all forthcoming expert reports and testimony into its response." Dkt. No. 237 at 1:14-16,

1:18-19. However, such an attempt to incorporate not-yet-existing expert reports into Phoenix's interrogatory response only supports the Court's finding that Phoenix's shift in theory effectively precluded VMware from understanding the central claim now alleged against it at the critical time: *before* fact discovery closed. *See id.* at 1:26-2:1; *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 3155574, at *5 (N.D. Cal. 2012) (affirming magistrate judge's order striking portions of expert reports based on Rule 37 violation: "[B]ecause [defendant] did not disclose its theories prior to the close of *fact* discovery, [plaintiff] did not have the opportunity to conduct additional fact discovery regarding [defendant's] new theories."). The Court thus finds that Phoenix's shift in theory rendered its prior disclosures to VMware both incomplete and incorrect such that Phoenix was required to "supplement or correct" them under FRCP 26(e). Fed. R. Civ. P. 26(e).[3]

Phoenix's failure to do so before the close of fact discovery prejudiced VMware by forcing it to proceed through that phase of discovery without the ability to explore the particular theories of infringement alleged against it, or to establish the facts necessary to support its affirmative defenses, which hinge almost entirely on VMware's ability to point to information in the record demonstrating what Phoenix knew or should have known about the details of VMware's use of the

---

[3] For the same reasons, the Court rejects Phoenix's argument that its incorporation of its future expert witness reports in its interrogatory response put VMware "on notice that Phoenix's response was not exhaustive" such that VMware should have "moved to compel a supplemental response" from Phoenix, or argued that Phoenix's response was improper. The Court also is not persuaded that VMware was reasonably put on notice of Phoenix's new theory of infringement based on deposition questions posed by Phoenix to various retained and unretained VMware expert witnesses regarding the removal of the Linux OS in ESXi, *see* Dkt. No. 237 at 2:9-27, or a request for ESX source code explaining "how the service console functions," *id.* at 3:13. These questions and requests merely establish that the Linux OS was removed from ESXi, but do not suggest that Phoenix intended to change its theory of infringement to assert that ESX and ESXi infringed in "fundamentally" different ways. These deposition exchanges and requests were thus insufficient to supplement Phoenix's response to VMware's interrogatories. Furthermore, Phoenix's assertion that VMware was "contemplat[ing] an argument that ESX complied with the licensing terms due to the existence of the [Linux OS]" based on a single deposition question posed by VMware to a Phoenix employee also fails. *See* Dkt. No. 271 at 2:21-22. Regardless of whether VMware was, in fact, "contemplating" such an argument, which the Court does not here decide, VMware's single question as to whether Phoenix's employee "considered Linux a standard operating system" in no way suggests that it was on notice of Phoenix's intention to shift to the theory of infringement upon which it now exclusively intends to rely at trial. *Id.* at 2:26. Finally, Phoenix cannot rely on a statement made in its December 12, 2015 mediation brief, as this Court's local rules plainly bar the disclosure of such documents to the trial court. *See id.* at 1:25-2:7; *cf.* ADR Local Rules 6-7(c) (mediation statements "constitute confidential information . . . and the assigned Judge shall not have access to them"), 6-12 (contents of written Mediation Statements "shall not be . . . [d]isclosed to the assigned judge").

11

Phoenix BIOS. Phoenix now openly admits that it intends to use its "distinct theory of infringement" with regard to ESXi in order to "eliminate[] potential defenses that VMware could have asserted as to GSX and ESX." That admission further supports the Court's conclusion, and underscores why it was critical for Phoenix to fully disclose its particular theories of infringement *prior* to the close of fact discovery, so VMware would have the opportunity to properly develop those defenses. *See* Dkt. No. 238 1:8-15. In fact, only after the close of fact discovery did Phoenix reveal what is now apparent: the "distinct theory of infringement" based on the removal of the Linux OS, which it disclosed for the first time in its expert reports, is the focal point of the case it seeks to put on at trial. Phoenix's belated disclosure of this "distinct theory" made it impossible for VMware to develop the factual record to support its affirmative defenses as to that theory, and to rebut the theory with evidence—not just "argument," as Phoenix suggests VMware can do now. *See* Dkt. No. 266 at 21:9. Phoenix's actions are thus neither "substantially justified" nor "harmless." Fed. R. Civ. P. 26(e), *see also Apple, Inc.*, 2012 WL 3155574, at *6 ("[T]he parties needed to crystallize and disclose their theories and contentions in a timely manner. [Defendant's] failure to timely disclose its amended answers to contention interrogatories until after the close of fact discovery impeded [plaintiff's] ability to conduct fact discovery on the undisclosed theories .").

//

//

//

For the foregoing reasons, the Court **GRANTS** VMware's Second Motion in Limine. Accordingly, Phoenix will be precluded from introducing evidence or argument at trial that the removal of the Linux OS from ESX in creating ESXi constituted an independent infringement of the Phoenix BIOS copyright. In addition, because the majority of the prejudice VMware faces as a result of Phoenix's shifting theory of infringement concerns its affirmative defenses, the Court intends to provide the jury with the following instruction, to which the Court will also adhere when deciding VMware's affirmative defenses of estoppel and laches: "For purposes of determining when Phoenix discovered or should have discovered an infringement, you are not to

distinguish between ESX and ESXi.  Instead, you are to assume that the earliest date on which Phoenix discovered or should have discovered an infringement as to either ESX or ESXi is the date that it discovered or should have discovered an infringement as to ESXi."

**IT IS SO ORDERED.**

Dated:   5/11/2017

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge