UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHOENIX TECHNOLOGIES LTD., <br>     Plaintiff, <br> v. <br> VMWARE, INC., <br>     Defendant. | Case No. 15-cv-01414-HSG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' RESPECTIVE MOTIONS IN LIMINE AND FILINGS REGARDING VARIOUS PRETRIAL ISSUES** <br><br> Re: Dkt. Nos. 183, 185, 190, 191, 192, 226, 291, 293, 314, 321 |

Pending before the Court are the *motions in limine* filed by Plaintiff Phoenix Technologies, Ltd. ("Phoenix") and Defendant VMware, Inc. ("VMware"), *see* Dkt. Nos. 183, 185, 190, 191, 192, 291, 293, as well as several issues raised by the parties in their joint pretrial and charging conference statements and various other filings, *see* Dkt. Nos. 227,[1] 260, 261, 283, 300, 310, 311, 315, 316, 321, 322, 323. Each motion and nearly every position on every issue is opposed.

During the pretrial conference and specially-set charging conference, the Court heard arguments on some of the motions in limine and various other issues raised by the parties. *See* Dkt. Nos. 266, 307. After carefully considering the papers filed in connection with the motions in limine and other issues, as well as the oral arguments made by the parties, the Court **GRANTS IN PART** and **DENIES IN PART** the motions in limine and other requests as set forth below. Because of the sheer number of the parties' disputes, the Court must rule here in a streamlined fashion without extensive elaboration.

---

[1] The clerk is directed to strike Dkt. No. 226, which is a duplicate of Dkt. No. 227.

## I. MOTIONS IN LIMINE

### A. Motions in Limine to exclude expert testimony

Phoenix has filed the following motions to exclude expert testimony: First Motion in Limine, Dkt. No. 183 (seeking to exclude the expert testimony of Richard Harry comparing the quantity of source code in the BIOS to the quantity of source code in ESXi and offering Mr. Harry's opinion as to the "overall value" of the Phoenix BIOS); and Third Motion in Limine, Dkt. No. 291 (seeking to exclude the expert testimony and opinions of Julie Davis regarding reasonable royalty damages as based on the wrong hypothetical negotiation date). For its part, VMware has filed the following motions to exclude expert testimony: Third Motion in Limine, Dkt. No. 294 (seeking to exclude the expert testimony and opinions of Matthew Lynde regarding actual damages as based on the wrong hypothetical negotiation date); Fourth Motion in Limine, Dkt. No. 191 (seeking to exclude the expert testimony and opinions of Matthew Lynde regarding actual damages as unduly speculative); and Fifth Motion in Limine, Dkt. No. 192 (seeking to exclude the expert testimony and opinions of Matthew Lynde on infringer's profits).

Federal Rule of Evidence 702 governs the admission of testimony by expert witnesses. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

For expert testimony to be admissible, the expert must be qualified, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004), and the expert's testimony must be "both relevant and reliable," *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (internal marks omitted); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original). Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise.

*United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. "Relevancy simply requires that the evidence logically advance a material aspect of the party's case." *AstenJohnson*, 740 F.3d at 463 (internal quotation marks omitted). Finally, reliability requires that an expert's testimony have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal quotation marks and brackets omitted).

To determine whether an expert's testimony is reliable, courts apply a "flexible" inquiry, considering such factors as (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. However, whether these specific factors are reasonable measures of reliability in a particular case is a matter the law grants the trial judge broad latitude to determine. *AstenJohnson*, 740 F.3d at 463 (internal quotation marks and citation omitted). For example, courts may also consider whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, *see General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), and whether the expert has adequately accounted for obvious alternative explanations, *see Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994). Ultimately, "judges are entitled to broad discretion when discharging their gatekeeping function . . . not only [in] decid[ing] *whether* to admit expert testimony . . . [but also] in deciding *how* to test an expert's reliability." *Hankey*, 203 F.3d at 1168 (emphasis in original)). And the Court notes that some caution is warranted regarding the exclusion of expert evidence on motions in limine: courts should be cognizant that "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Applying the standards described above to the five motions in limine seeking to exclude expert testimony, *see* Dkt. Nos. 183, 191, 192, 291, 294, the Court finds that experts Julie Davis, Matthew Lynde, and Richard Harry are qualified and that their testimony meets the reliability and relevance requirements of Rule 702, with two exceptions relating to the testimony of Richard

3

Harry and Ms. Davis' 2005 hypothetical negotiation date, discussed below.

Specifically, with regard to VMware's Fourth Motion in Limine, the Court finds exclusion of Dr. Lynde's testimony to be unwarranted. While VMware's arguments regarding the reliability of Dr. Lynde's hypothetical license analysis may go to the weight of Dr. Lynde's testimony, they do not constitute grounds for exclusion. VMware's Fourth Motion in Limine is therefore denied.

Similarly, with regard to VMware's Fifth Motion in Limine, the Court finds that Dr. Lynde's measure of apportionment, which was based in part on the hypothetical amount VMware should have paid for the additional allegedly infringing uses of the BIOS, enabled him to calculate a "reasonable approximation of apportionment of infringer's profits." *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 U.S. Dist. LEXIS 58302, at *16 (N.D. Cal. May 2, 2016). Given that Phoenix solely seeks damages for infringer's profits attributable to VMware's use of the BIOS in ESXi, for which the parties do not have any real-world license figures, Dr. Lynde necessarily relied in part on a hypothetical value. That hypothetical value was not based, as VMware suggests, on a "counterfactual scenario . . . using a[] [non-infringing] alternative," *see* Dkt. No. 192 at 2, but on Dr. Lynde's reasonable estimation of what VMware would have been required to pay for its allegedly infringing use. In addition, the Court finds that Dr. Lynde used an appropriate apportionment base. Dr. Lynde's infringer's profits analysis was thus reasonable, and VMware's Fifth Motion in Limine is denied.[2]

Finally, as noted above, there are two exceptions to the Court's denial of the motions in limine relating to expert testimony. First, with regard to Phoenix's First Motion in Limine, the Court finds that Mr. Harry, who has worked for VMware for approximately 10 years, Dkt. No. 194-1 ¶1, is qualified to compare the quantity of source code comprising the BIOS to the quantity of code in ESXi. However, the Court does not find Mr. Harry qualified to opine as to the "relative lack of importance of [the Phoenix] BIOS" or its "overall value" to VMware, as he offers no reliable basis or foundation for reaching that conclusion. The Court will therefore allow Mr.

---

[2] On April 21, 2017 VMware submitted unsolicited supplemental arguments regarding its Fifth Motion in Limine, to which Phoenix objects. *See* Dkt. Nos. 309, 310. The Court agrees with Phoenix that these additional arguments were not permitted, and does not consider them here.

Harry to testify regarding the source code quantity comparison, but not as to the "relative lack of importance" or the "overall value" of the code to VMware.

Second, the parties' Third Motions in Limine dispute the proper hypothetical negotiation damages date. *See* Dkt. Nos. 291, 294. While Phoenix's expert Dr. Lynde "focus[ed] on market conditions at the time of a hypothetical negotiation that would have transpired in late 2007," Dkt. No. 182-22 ¶ 16, VMware's expert Julie Davis contemplated two different scenarios with hypothetical negotiations that would have taken place in 2005[3] and 2006, *see* Dkt. No. 181-7 at 27. Ms. Davis first "opine[d] that damages may be determined by ascertaining Phoenix's lost license revenue if the parties' actual September 2005 license negotiations included an express license for the accused products." Dkt. No. 233 at 1; *see also* Dkt. No. 181-1 at 27-28. In contrast, Ms. Davis' 2006 and Dr. Lynde's 2007 hypothetical negotiation dates were based on the date each party alleged that VMware first infringed the copyright. *See* Dkt. Nos. 181-1 at 28, 182-22 ¶ 51.

Generally, "'[a]ctual damages' are the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement," which "can be awarded in the form of lost profits, [or] hypothetical-license damages." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014). "To calculate the 'market value' of the injury to the plaintiff based on a hypothetical-license theory, we look to 'the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'" *Id.* (quoting *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't,* 447 F.3d 769, 786 (9th Cir. 2006) (internal quotation marks omitted)). In addition, "there is nothing to suggest that [a court] should tie a hypothetical negotiation to a prior infringement no longer at issue." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1364 (Fed. Cir. 2006) (holding that the hypothetical negotiation date for a surgical was device properly based on the

---

[3] To the extent VMware contends that Ms. Davis' 2005 analysis does not constitute a hypothetical negotiation because it merely "tweak[s]" the parties' actual 2005 MLA negotiations in order to account for VMware's additional allegedly infringing use of the BIOS, *see* Dkt. No. 307 at 10:1-5, 10:15-17, the Court disagrees. Insofar as the analysis purports to determine what terms the parties would have negotiated for a license incorporating all of the allegedly infringing uses, that exercise is necessarily hypothetical.

5

infringement by that device, rather than the past infringement by an earlier iteration of the device).

The proper hypothetical negotiation date here is thus VMware's alleged date of first infringement with regard to ESXi[4]—an event VMware contends occurred in June 2006 and Phoenix contends occurred in December 2007 "at the earliest."[5] *See* Dkt. No. 291 at 2. Accordingly, while Ms. Davis' 2005 hypothetical license theory is based on an incorrect hypothetical negotiation date such that it will be excluded,[6] Ms. Davis' 2006 and Dr. Lynde's 2007 hypothetical dates are properly tied to the alleged dates of first infringement and are therefore admissible. To the extent the parties' Third Motions in Limine dispute VMware's actual date of first infringement, that is a question of fact to be decided by the jury. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."). The Court therefore denies VMware's Third Motion in Limine, and grants Phoenix's Third Motion in Limine only insofar as it relates to Ms. Davis' 2005 hypothetical negotiation date.

### B. Motions in Limine to exclude other evidence

Two other motions in limine are before the Court. Phoenix's Second Motion in Limine

---

[4] Given the Federal Circuit's holding in *Applied Medical*, 435 F.3d 1356, and the fact that Phoenix will only seek damages with regard to ESXi's infringements at trial, the Court rejects VMware's contention that Phoenix's failure to file an amended complaint eliminating their claims regarding VMware's use of GSX and ESX effectively ties the date of first infringement back to the first date that either of those earlier products infringed the copyright. *See* Dkt. No. 307 at 34:19-25; *cf. Fahmy v. Jay-Z*, CV 07-5715 CAS (PJWx), 2013 U.S. Dist. LEXIS 119817, at *15 (C.D. Cal. Aug. 15, 2013) (holding that when determining the period of delay with regard to laches, "the determinative fact is the release date for the initial infringing work in a series of works embodying that infringing conduct.").

[5] Phoenix contends that the date of first infringement here should be tied to the date that VMware first "sublicensed, sold, or otherwise distributed" the BIOS program in its ESXi product, which it alleges occurred in December 2007 "at the earliest." *See* Dkt. No. 291 at 2. However, VMware contends that the date of first infringement "extend[s] to pre-sale activities, including modification, compiling source code, and reproduction in a manner that allegedly violates the MLA." *See* Dkt. No. 233 at 4 (quoting *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1116 (N.D. Cal. 2011) ("Where an accused product is developed and tested here in the United States . . . 'use' and therefore infringement will almost always begin well before the first sale.")). VMware contends that the proper hypothetical negotiation date is thus "no later than June 2006," when "ESXi entered beta testing . . . ." *Id.*

[6] To the extent VMware seeks to rely on the parties' actual 2005 negotiations as objective evidence of the fair market value of the hypothetical license, it may properly do so. *See Oracle Corp. v. SAP*, 765 F.3d at 1088, 1091-93.

seeks to exclude a 2015 agreement between VMware and a third-party corporation, in which VMware licensed a "purported [BIOS] replacement" (the "Agreement"). *See* Dkt. No. 183-13 at 1. Phoenix argues that (1) the Agreement is irrelevant to a damages determination because it postdates the date of infringement and is not "sufficiently comparable to a hypothetical license for Phoenix's BIOS"; (2) VMware's corporate representative was unaware of the Agreement; and (3) the Agreement is unfairly prejudicial and confusing. *Id.* at 3 (internal quotation marks omitted). In response, VMware contends that the Agreement "is relevant to multiple disputed issues, including the jury's evaluation of . . . non-accused alternatives to the Phoenix BIOS, . . . Phoenix's damages claims, and . . . VMware's estoppel and laches defenses." Dkt. No. 232 at 2.

Aside from the requirement that hypothetical negotiation dates must be determined based on the date of first infringement, the Court is unaware of any Ninth Circuit precedent directly addressing whether courts may otherwise consider post-negotiation information when determining a reasonable royalty. However, the Federal Circuit has held that while courts are "not require[d]" to exclude post-infringement evidence when determining a reasonable royalty, post-dated evidence "certainly" may be excluded. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276-77 (Fed. Cir. 1999). This position has been adopted by at least one court in this Circuit. *See Memry Corp. v. Kentucky Oil Tech. N.V.*, No. C-04-03843 RMW, 2007 WL 4208317, at *11 (N.D. Cal. Nov. 27 2007) (stating that "courts have the discretion to permit consideration of post-negotiation information when formulating a reasonable royalty"). While the Court has some skepticism about the extent to which an agreement from 2015 is indicative of what a hypothetical negotiation would have looked like in 2006 or 2007, such questions go to the weight of that evidence rather than its admissibility. Because the Agreement may be relevant to the parties' damages theories, the Court will not exclude evidence of the Agreement at this stage.

For its part, VMware's First Motion in Limine seeks to prevent Phoenix from presenting evidence at trial that was not disclosed during discovery, including for example, (1) evidence of "projections"; (2) Phoenix's employees' knowledge of VMware's use of the BIOS; and (3) what Phoenix would have charged for a fully-paid up license in 2005. *See* Dkt. No. 293. The Court denies this motion without prejudice, and will defer consideration of these potential issues until

7

1 the objections are tied to particular pieces of evidence.

## II. ADDITIONAL ISSUES RAISED BY THE PARTIES

The parties raise numerous other pretrial issues, each of which the Court addresses below.

### A. Admissibility of complaint

Phoenix seeks to preclude VMware from introducing its complaint as an exhibit at trial. *See* Dkt. No. 227 at 11. Phoenix contends that because it has "narrow[ed] the claims asserted in its Complaint for purposes of trial . . . by streamlining the trial to the infringing ESXi products," "[t]he Court should bar VMware from introducing Phoenix's Complaint as evidence or referring to legal theories or legal conclusions in the Complaint that Phoenix does not assert at trial." *Id.* at 11-12. In response, VMware argues that "[t]he allegations in the Phoenix complaint are relevant to motive, credibility, and to VMware's defenses, including estoppel and the statute of limitations," and amount to judicial admissions. *Id.* at 14.

As an initial matter, the Court finds that the allegations contained in Phoenix's complaint do not constitute judicial admissions, as only factual—as opposed to legal—assertions constitute judicial admissions. *See Foley v. JetBlue Airways, Corp.*, No. C10-3882 JCS, 2011 WL 3359730, at *9 (N.D. Cal. Aug. 3, 2011) ("in order to constitute a judicial admission, the party against whom the admission is sought must have admitted a *fact*.") (emphasis in original). Second, this issue is closely related to VMware's Second Motion in Limine, which seeks to preclude Phoenix from asserting contentions not disclosed during discovery. *See* Dkt. No. 187; *see also* Dkt. No. 227 at 15 (VMware arguing that Phoenix's factual assertions "regarding how certain products infringed" "inform the meaning of certain contractual terms as applied to ESXi, not the least of which is whether ESX and ESXi operate in a different manner for purposes of the contracts."). However, given the Court's recent order on that motion in limine, *see* Dkt. No. 325, the Court finds the relevance of Phoenix's complaint to be low. Motive is not an element of any claim or defense in this action. To the extent the complaint may be marginally relevant as to credibility, the Court finds that the potential to confuse the jury and waste time by referring to claims Phoenix does not intend to assert at trial substantially outweighs any such relevance. *See Duarte v. Catalina Foothill Sch. Dist. No. 16*, CV-12-00844-TUC-JAS, 2014 WL 5094128, at *2 (D. Ariz.

8

Oct. 10, 2014) (denying admission of complaint under Fed. R. Evid. 403 because Plaintiff had voluntarily dismissed one discrimination claim, and "any reference to this dismissed claim at trial is outweighed by Rule 403 considerations."). The Court will therefore exclude the complaint under Rule 403.

### B. Admissibility of VMware product manuals

The parties dispute the admissibility of twenty-three VMware product manuals "on the grounds that they purportedly refer to the Linux Console Operating System (the "Linux OS")." *See* Dkt. Nos. 283 at 7, 323 at 1. However, the parties have stipulated to the admissibility of five of these documents. Dkt. No. 323 at 1, 2. The parties are instructed to submit to the Court any of the remaining eighteen documents Phoenix wishes to admit and to which VMware objects by 4pm the day before Phoenix intends to introduce them at trial, and the Court will review them on a case-by-case basis. *See* Dkt. No. 307 at 47. However, the Court cautions the parties that (1) it is not inclined to exclude relevant documents based solely on one party's willingness to stipulate to facts contained therein; and (2) it will not permit the introduction of needlessly cumulative evidence.

### C. Contractual covenants versus license conditions

VMware contends that three limitations in the MLA constitute contractual covenants rather than license conditions, such that any claim that these terms were violated is time-barred pursuant to the Court's January 6, 2017 order: "(i) the use of the Phoenix BIOS in VMware products supporting more than two processors; (ii) the use of the BIOS in virtual machines that have virtual chipset capabilities beyond those found in the 440BX chipset; and (iii) the storage of the Phoenix BIOS in source code locations other than those defined in the contract." *See* Dkt. Nos. 227 at 31, 281 at 5-6; *see also* Dkt. No. 222 at 14 (holding that Phoenix's "breach of contract claims are time-barred"). Phoenix contends that the limitations are license conditions that are tied to their copyright infringement claims, and that these claims therefore are not time-barred. *See* Dkt. No. 227 at 32-33.

"We refer to contractual terms that limit a license's scope as 'conditions,' the breach of which constitute copyright infringement. We refer to all other license terms as 'covenants,' the

9

breach of which is actionable only under contract law." *MDY Indus. v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2011) (citing *Foad Consulting Group v. Musil Govan Azzalino,* 270 F.3d 821, 827 (9th Cir. 2001)). "A covenant is a contractual promise, i.e., a manifestation of intention to act or refrain from acting in a particular way, such that the promisee is justified in understanding that the promisor has made a commitment," while "[a] condition precedent is an act or event that must occur before a duty to perform a promise arises." *Id.* The Ninth Circuit has held that "[t]o recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright." *Id.* at 940. "Wherever possible, equity construes ambiguous contract provisions as covenants rather than conditions." *Id.* at 939.

Applying these principles, the Court finds that the three limitations are license conditions rather than contractual covenants, as the express language of the MLA and its amendments make clear.[7] First, both the two-processor and location limitations are set forth in the MLA under the section titled "LICENSE GRANT/CONDITIONS." *See* Dkt. No. 120, Ex. 15 § 2.0. Those provisions statw that "[u]nless specifically provided otherwise in its Specification, each copy of a Program is provided for use on a single central processing unit," and "Licensee will use the Source Code only at the site(s) designated either in Exhibit A hereto or in another written document signed by Phoenix." *Id.* §§ 2.1, 2.5. Exhibit A to the MLA lists a specific address that is "COVERED BY [the] SOURCE CODE LICENSE," and states that "Licensee shall not distribute Source Code to additional sites without first executing an agreement to do so, and paying additional Source Code license fees." *Id.*, Ex. A § III. Exhibit A also refers to the provisions contained in § 2.0 as "conditions" limiting the scope of the license. *See id.* ("Said license shall be subject to the conditions set forth in Section 2 of this Agreement."). Similarly, the parties' 2000 MLA amendment makes clear that the 440BX chipset restriction is a license condition, stating that the license is subject to "applicable restrictions set forth in the [MLA] and in Exhibit A to this

---

[7] Plainly, VMware should have raised these issues at the dispositive motion stage rather than on the eve of trial. Nevertheless, because these are threshold issues that will impact several aspects of the trial presentation, the Court considers the merits of the parties' arguments.

10

Amendment." *Id.* § 1. Exhibit A to the 2000 amendment provides that "Licensee is granted a license" for the "PhoenixPICO BIOS." *See* Dkt. No. 127-3, Ex. A. It further states that the PhoenixPICO BIOS "is licensed for use only in systems based on the . . . Intel 440BX Chipset." *Id.* These provisions thus constitute license conditions that "must occur before a duty to perform a promise arises." *MDY*, 629 F.3d at 939.

Further, these conditions are tied to two of Phoenix's exclusive copyright rights: namely, its rights to copy and to use the BIOS. *See Netbula, LLC v. Storage Tech. Corp.*, No. C06-07391 MJJ, 2008 WL 228036, at *5 (N.D. Cal. Jan. 18, 2008) (holding that license language requiring the licensee to use the product only on certain types of operating systems "appear[ed] to limit the scope of the license itself" and was therefore "not a separate contractual covenant"); *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 876 (C.D. Cal. Feb. 6, 2013) (holding that a licensee's copying "beyond the temporal, geographical, and media limitations of the licenses" "would encroach upon [plaintiff's] exclusive right to copy his works, conferred upon him by the Copyright Act, and would therefore violate a condition of the license rather than a covenant"). The Court thus finds that the three provisions at issue here are license conditions rather than contractual covenants, and are properly tied to Phoenix's copyright infringement claims.[8] Accordingly, claims that VMware violated these conditions are not time-barred, and Phoenix may pursue them at trial.

### D. Estoppel & laches

The parties agree that estoppel and laches are equitable defenses that the Court must resolve. Dkt. No. 227 at 18. However, Phoenix requests an advisory opinion from the jury on the issue of estoppel, and VMware "believes the issue of laches should be resolved by the Court at a separate hearing or trial . . . [because] [i]n making its showing that delay should bar Phoenix's

---

[8] While VMware argues that Phoenix only pled these issues in its breach of contract claims rather than in its copyright infringement claims, such that the provisions must be interpreted as contractual covenants, *see* Dkt. No. 227 at 32, the Court disagrees. Provisions in the MLA and its amendments could not be affected by the way that Phoenix structured its complaint, or by Phoenix's attempt to shift its theories of infringement prior to trial. Rather, the provisions either are or are not license conditions, and the Court is persuaded by the plain language of the MLA and its amendments that they are.

11

claim for infringer's profits, VMware will show both evidentiary and substantive prejudice flowing from Phoenix's long delay in filing suit." *Id.* As indicated at the February 2, 2017 and April 17, 2017 hearings, the Court agrees that both issues are equitable and, given the numerous other issues that will be submitted to the jury, will not request advisory opinions on either issue. *See* Dkt. Nos. 266 at 30; 307 at 57, 58, 59. The Court also will defer consideration of these issues to post-trial proceedings.

### E. Infringer's profits

The parties dispute (1) whether infringer's profits is an equitable or legal remedy, and (2) whether Phoenix's recovery of infringer's profits would constitute a double recovery.[9] *See* Dkt. Nos. 227 at 19-20, 300 at 1-3. With regard to the first issue, while the Ninth Circuit has held that the award of infringer's profits under the Lanham Trademark Act "is equitable, not legal," *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075-75 (9th Cir. 2015), the Ninth Circuit has affirmed jury awards of infringer's profits in copyright infringement cases under 17 U.S.C. 504(b), *see Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000); *Lucky Break Wishbone Corp. v. Sears Roebuck and Co.*, 373 Fed. App'x 752, 757-58 (9th Cir. 2010). The Court therefore is not persuaded that the award of infringer's profits is an equitable remedy in the copyright context, and will submit this issue to the jury.

With regard to the second issue, Federal Rule of Civil Procedure 504 states that "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages." Fed. R. Civ. P. § 504(a). Specifically, "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." *Id.* § 504(b); *see also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707-08 (9th Cir. 2004) ("Congress explicitly provides for two distinct monetary remedies—actual damages and recovery of wrongful profits. These remedies are two sides of the damages coin—the copyright holder's losses and the

---

[9] The parties agreed at the April 17, 2017 hearing that "both actual losses and infringer's profits as types of recovery are permitted." *See* Dkt. No. 307 at 36.

12

infringer's gains."). Phoenix may therefore seek both actual damages and infringer's profits. Furthermore, because Phoenix seeks only to recover for (1) "VMware's infringing use of BIOS without a license, and (2) partial disgorgement of profits that VMware received from the sale of the infringing ESXi products," and does not also seek to recover for any lost sales of the Phoenix BIOS, the Court finds that there is no risk of double recovery here. *See Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876, 881 n.4 (9th Cir. 1992) (holding that § 504(b) "bars a plaintiff from recovering in the form of damages the profits it could have made from selling the infringing item in competition with the infringer and the profits gained by the infringer from its use of the copyrighted item. Because [plaintiff] is not in the business of selling her services as a homebuilder, defendants cannot complain about the profit award to [plaintiff] on the basis that it constitutes forbidden double damages.").

### F. Testimony of Peter Chung

VMware seeks to admit deposition testimony of Peter Chung, an employee of Phoenix's equity owner, Marlin Equity, which VMware contends is relevant to establishing Phoenix's alleged motive in bringing this lawsuit. *See* Dkt. No. 281 at 8 (arguing that Mr. Chung's testimony "explains why, after saying nothing for years—in spite of the fact that so many members of its management team knew that VMware was using its BIOS—Phoenix decided to bring this action."); *see also* Dkt. No. 311 at 1-2. Phoenix seeks to exclude those portions of Mr. Chung's testimony relating to "(1) the amount that Marlin paid to acquire Phoenix, (2) Marlin's projections of Phoenix's financial performance, and (3) Phoenix's performance relative to Marlin's projections" under Federal Rules of Evidence 401, 402, and 403, as "irrelevant and unduly prejudicial." Dkt. No. 283 at 9.

The Court agrees with Phoenix. Motive is not an element of any claim or defense in this action, and the Court will decide two of the main issues as to which Mr. Chung's testimony on Phoenix's motive may be probative—estoppel and laches. The only remaining issue on which such testimony may be probative is VMware's affirmative statute of limitations defense. However, the Court finds that even if Mr. Chung's testimony were relevant as to that issue, the danger that such testimony would waste time, confuse the issues, and mislead the jury

13

"substantially outweigh[s]" any possible probative value. Fed. R. Evid. 403. The Court will therefore exclude all testimony by Mr. Chung relating to the three topics identified above.

### G. Testimony of Tom Jurewicz

VMware seeks to preclude Phoenix from introducing the following deposition testimony from former VMware Chief Financial Officer, Tom Jurewicz:

> Q. When you negotiated the 2005 agreement, did you think that VMware would ever have to pay another dime for using the Phoenix BIOS in any of the products that VMware was selling at that time?
>
> A. No, I did not think that we would have to pay any more money to Phoenix for shipping the products that we were shipping then.

*See* Dkt Nos. 311 at 2-3, 315, Ex. A at 2.[10] VMware contends that "at the time that Mr. Jurewicz was deposed, Phoenix was arguing that the 2005 [amendment to the MLA] only allowed use of its BIOS in desktop (and not server) products." Dkt. No. 311 at 2. However, VMware argues that because Phoenix now seeks to limit its claims to the specific server product ESXi, as opposed to ESX, this testimony is "arguably not as helpful to VMware," and will instead be used to improperly "suggest that Mr. Jurewicz believed that VMware could *only* use the BIOS for the products that it was selling in 2005," which would not include the ESXi product, and which VMware contends is "not what [Mr. Jurewicz] believes." *Id.* at 2-3.[11] At the April 17, 2017 hearing, Phoenix admitted that such an inference "could be drawn" from the testimony. Dkt. No. 307 at 64:9-20.

Given the Court's ruling on VMware's Second Motion in Limine, *see* Dkt. No. 325, the Court will not exclude this testimony under Rule 403, because Mr. Jurewicz's statement is relevant, and any potentially prejudicial effect of the statement does not substantially outweigh

---

[10] As discussed *infra* in section II(J)(iii), aside from this specific deposition designation, any additional objections to Mr. Jurewicz's deposition designations should be filed with the Court by 4pm the day before a party intends to introduce them.

[11] VMware has submitted a new declaration from Mr. Jurewicz, purportedly "to show that the designation of the [above-referenced question and answer] by Phoenix is misleading because Phoenix wants to use it to have the jury draw an improper inference." Dkt. No. 323 at 14; *see also* Dkt. No. 313. The Court declines to consider that declaration, as it is inappropriate to supplement Mr. Jurewicz's past sworn testimony in this manner at this stage.

14

that relevance.[12]  What Mr. Jurewicz meant by his answer is a matter for trial.

### H. Testimony of Krystia Przepiorski

VMware seeks to preclude in-house VMware attorney Krystia Przepiorski from being called to testify at trial regarding "VMware audits and any investigations or inquiries pertaining to the Phoenix BIOS." *See* Dkt. No. 227 at 24.  VMware contends that (1) "[Przepiorski's] testimony established that there were no audits or investigations of the Phoenix contract performed by accountants," a fact to which VMware is willing to stipulate; (2) "[t]he only arguable "investigation" was done by VMware lawyers and is privileged"; and (3) her testimony may confuse the jury and prejudice VMware. *Id.*  In response, Phoenix argues that it "is entitled to call Ms. Przepiorski as a witness to establish the fact (if not the content) of any audits that VMware claims to be privileged, and the steps that VMware did or did not take in assessing its use of BIOS is VMware's products." *Id.* at 27.  Phoenix further contends that VMware's offer to stipulate "that there were no audits performed by 'accountants' does nothing to address the numerous other topics for which VMware decide[d] to designate Ms. Przepiorski as its 30(b)(6) witness as well as matters for which she has personal knowledge . . . ." *Id.*

Because VMware's offer to stipulate to certain facts may not completely address Phoenix's questions regarding "any and all analyses, investigations, or inquiries by VMware regarding [the] Phoenix BIOS," *id.* at 24, 27, Ms. Przepiorski likely will be allowed to testify as to the existence (but not the content of) the audits, as well as the topics on which she was designated as a 30(b)(6) witness, to the extent that testimony is not privileged.  But based on the information presented by the parties to date, the Court does not have enough facts to evaluate the parties' dueling claims.  To avoid the prospect of having Ms. Przepiorski assert privilege on the stand, Phoenix is instructed to file a detailed offer of proof describing the specific testimony it seeks to elicit by 4pm two days before it wishes to call Ms. Przepiorski to testify.

Finally, Phoenix objects to Ms. Przepiorski's attendance at trial prior to her testimony,

---

[12] The Court grants Phoenix's administrative motion to file under seal portions of Exhibit A to their offer of proof concerning the testimony of Mr. Jurewicz, as the specified portions of that document constitute confidential business information. *See* Dkt. Nos. 314, 315, Ex. A.

unless she is designated VMware's corporate representative under Federal Rule of Evidence 615, instead of VMware's currently designated representative, Ray O'Farrell. *See* Dkt. No. 227 at 30. The Court agrees that VMware may only designate one corporate representative under Rule 615, and orders VMware to choose one representative. *See* Fed. R. Evid. 615 (a court must not exclude "an officer or employee of a party that is not a natural person, after being designated as the party's representative.").

### I. "Projections" documents

VMware objects to Phoenix's request to admit "two internal Phoenix documents that contain inconsistent 'projections' that Phoenix contends were provided by VMware." Dkt. No. 227 at 23. VMware contends that it did not provide Phoenix with the documents, that nobody at Phoenix has personal knowledge that the projections came from VMware, and that the documents are thus "unreliable hearsay that should not be admitted or referred to." *Id.* at 24. In response, Phoenix argues that "[t]estimony from multiple witnesses will be offered at trial to establish the appropriate foundation for these documents, which are highly relevant, non-hearsay evidence." *Id.* at 26.

The Court finds VMware's contentions inappropriate for resolution at this stage, as each of these documents' admissibility will depend on whether Phoenix is able to establish an appropriate foundation. The Court will thus defer consideration of VMware's arguments until Phoenix attempts to admit them at trial.

### J. Deposition objections

#### i. Transcripts

The parties request that they either be allowed to (1) provide transcripts of any video depositions presented at trial to the court reporter; or (2) file any such transcripts on ECF so that they may become part of the trial record. *See* Dkt. No. 277 at 29-30. In lieu of either of the above, the parties are ordered to create a flashdrive containing all videotaped deposition excerpts presented at trial. The flashdrive should then be given an exhibit number, identified on the exhibit lists, and submitted to the Court. *See* Dkt. No. 266 at 46-47.

//

### ii. Deposition videos

To the extent the rule of completeness requires the parties to play designated and counter-designated deposition videos simultaneously, the parties are ordered to do so. *See* Fed. R. Civ. P. 32(a)(6) ("If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts."); Fed. R. Evid. 106. The burden of establishing the applicability of the rule of completeness falls on the party seeking to have a counter-designation played in the other party's case.

### iii. Disputes regarding the parties' deposition designations

Each party objects to several of the opposing party's deposition designations. *See* Dkt. Nos. 323 & Exs. A, B. Aside from the designations already discussed herein, the Court denies each of these objections without prejudice. The parties are instructed to submit to the Court any objections to deposition designations by 4pm the day before they are scheduled to be introduced at trial, and the Court will review them on a case-by-case basis.

### K. Pentium processor testimony

Phoenix has indicated that it will not pursue a claim made in its complaint that ESXi infringes because it "support[s] processors other than the Intel Pentium processor." *See* Dkt Nos. 1 ¶ 68(c), 130-1 at 10-11 ("Phoenix does not intend to assert at trial that the ESXi products are unauthorized and infringing products on the basis that those products 'support processors other than the Intel Pentium processor'"); Dkt. No. 1 ¶ 68(c). Nevertheless, Phoenix has designated certain pieces of deposition testimony regarding that claim. Because Phoenix has abandoned its Pentium processor claim, any relevance of such testimony is substantially outweighed by the danger that it may confuse the issues, waste time, and mislead the jury. The Court therefore excludes such testimony.

### L. Use of the term "hacking" in trial exhibits

VMware objects to Phoenix's use of trial exhibits that refer to the terms "hack" or "hacking," as being prejudicial and confusing. Dkt. No. 260 at 3. The Court previously held that while VMware may "explain the context" for the documents, they "are relevant and not

excludable under Rule 403." *See* Dkt. No. 266 at 48.

### M. Courtroom technology

The parties "request that they be permitted to use certain technology during the trial." Dkt. No. 227 at 30. The parties are instructed to submit to the Court a proposed order allowing their requested equipment to be brought into the courthouse by May 25, 2017.

### N. Demonstratives

The parties indicate that "[a]fter demonstratives have been used during trial, [they] may 'lodge' them in the case docket in order for them to become part of the official record of the case. They will not be admitted as exhibits." *Id.* at 33. The Court finds this acceptable. Any such demonstratives should be marked for identification.

### O. Motion to strike

VMware moves to strike portions of Phoenix's supplemental authority on Jury Instruction No. 27, as being outside the scope of the Court's April 18, 2017 order directing the parties to "provide supplemental authority on whether to give Disputed Instruction No. 27 before the jury is deadlocked." *See* Dkt. Nos. 306, 316, 322. The Court agrees with VMware that Phoenix's supplemental authority goes beyond the scope of the Court's order. However, rather than striking portions of Phoenix's supplemental authority, the Court will not consider those portions of the authority that are unresponsive to the Court's order in its analysis of that instruction. For that reason, the Court also declines to allow VMware to file supplemental responsive authority.

## III. RESIDUAL ISSUES RAISED BY THE PARTIES

Finally, the parties have at one point or another raised the following additional litany of issues: (1) VMware's objection to Phoenix's production of the "entire deposition transcripts of VMware employees Olivia Sun and Christina Lee," *see* Dkt. No. 227 at 26, 28; (2) Phoenix's objections to "98% of VMware's trial exhibits," *id.* at 15; (3) Phoenix's objection to VMware's allegedly "untimely disclosure of un-retained expert witnesses" Ray O'Farrell, Richard Harry, Jeff Jennings, and Carl Eschenbach, *id.* at 10; (4) VMware's objection to Phoenix's allegedly untimely disclosure of several "important documents," *see id.* at 25; (5) VMware's objections to Phoenix "improperly designat[ing] only portions of certain discovery responses . . . rather than the full

18

response," *id.* at 26; and (6) Phoenix's "'foundation' objections to certain of VMware's deposition designations where no such objection was made at deposition," *see* Dkt. Nos. 260 at 1, 261 at 1. The Court does not know the current status of these issues. Because the parties did not again raise these issues in their supplemental pre-trial conference statement, *see* Dkt. No. 323, the Court assumes they have been resolved. However, should the parties contend that any of these issues remain to be decided at this stage, they are directed to file a statement of no more than five pages listing their remaining arguments no later than 3pm on Friday, May 12, 2017.

## IV. CONCLUSION

For the foregoing reasons, with regard to the parties' motions in limine, the Court (1) **GRANTS** Phoenix's First Motion in Limine only insofar as it seeks to exclude Mr. Harry's testimony relating to the "overall value" of the source code to VMware; (2) **DENIES** Phoenix's Second Motion in Limine; and (3) **GRANTS** Phoenix's Third Motion in Limine with regard only to Ms. Davis' 2005 hypothetical negotiation date. The Court also **DENIES** VMware's Third, Fourth, and Fifth Motions in Limine, and **DENIES** VMware's First Motion in Limine without prejudice.

**IT IS SO ORDERED.**

Dated: 5/11/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

19