UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHOENIX TECHNOLOGIES LTD.,

          Plaintiff,

    v.

VMWARE, INC.,

          Defendant.

Case No. 15-cv-01414-HSG

**ORDER ON JURY INSTRUCTION NO. 27 REGARDING IMPUTATION**

The Court files this order for the record regarding Jury Instruction No. 27, which concerns the imputation of knowledge to a corporation. The parties agree that an imputation instruction should be given, but propose substantially different instructions. *See* Dkt. No. 289 at 89-92. Having considered the parties' arguments, the Court will provide the following instruction to the jury:

> As against Phoenix as an employer, Phoenix is deemed to have notice and knowledge of whatever its employee has notice or knowledge of and ought in good faith and in the exercise of ordinary care and diligence, to communicate to Phoenix, so long as Phoenix's employee acquired the knowledge while acting in the course and scope of his or her employment. This is so whether Phoenix's employee communicated the knowledge to Phoenix or not.

The parties eventually agreed that California law governs this issue. *See* Dkt. No. 341 at 41:18-20, 42:5-11, 42:12-14. However, there is no California Civil Jury Instructions ("CACI") model instruction covering this concept. The Court thus derived this instruction from its reading of California case law, as summarized below. In *Sanders v. Magill*, the Supreme Court of California established that "[k]nowledge of an officer of a corporation within the scope of his duties is imputable to the corporation." 9 Cal. 2d 145, 153 (1937). The California Court of Appeal expanded upon this definition in *Columbia Pictures Corp. v. De Toth*, 87 Cal. App. 2d

620, 630 (1948), holding that:

> As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other. A principal is chargeable with and is bound by the knowledge of, or notice to, his agent received while the agent is acting within the scope of his authority and which is with reference to a matter over which his authority extends. The fact that the knowledge acquired by the agent was not actually communicated to the principal . . . does not prevent operation of the rule. The knowledge is, in law, imputed to the principal.

*Id.* (internal quotation marks omitted); *see also Sanders*, 9 Cal. 2d at 154 (holding that knowledge need not be actually communicated to the principal or other employees for it to be imputed, as to hold otherwise "would permit a corporation, by not letting its right hand know what is in its left hand, to mislead and deceive those who are dealing with it in perfectly good faith."). In *FMC Corp. v. Plaisted and Cos.*, a case VMware brought to the Court's attention, the California Court of Appeal further held that knowledge of "rank and file" employees may be imputed to a corporation in the same way as its corporate officers, managers, directors, and supervisory employees. 61 Cal. App. 4th 1132, 1212-1214 (1998); *see also* Dkt. No. 341 at 49:1-2. Taking all of these principles into consideration, the *FMC* court affirmed the trial court's administration of three specific jury instructions on imputation, two of which this Court has combined to create the instruction it will give in this case.

Defendant VMware, Inc. ("VMware") makes the additional argument that "[i]mputation requires only a finding that a Phoenix employee acquire or have in mind a fact while acting within the scope of employment," such that the knowledge an employee gains prior to his or her employment may also be imputed to the corporation. Dkt. No. 430 at 3:14-15. In support of its position, VMware relies on the California Supreme Court's decision in *O'Riordan v. Fed. Kemper Life Assur.*, 36 Cal. 4th 281, 288 (2005).[1] In *O'Riordan*, plaintiff and his wife consulted an independent insurance agent to replace their life insurance policies with term insurance. *Id.* at 284. At the agent's suggestion, the couple completed application forms for policies at the

---

[1] *O'Riordan* cites the same California Civil Code provision, section 2332, discussed in *Columbia Pictures*. *See* 36 Cal. 4th at 288 (citing section 2332 for the principle that "[a]s against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.").

preferred nonsmoker rate through the Federal Kemper Assurance Company, despite the plaintiff's wife informing the agent that she had previously smoked for many years and that her last policy was a smoker's policy. *Id.* While the agent was an independent agent, he had never sold insurance for Kemper. *Id.* Two days after the couple had filled out their applications, the agent was appointed to be a Kemper agent. *Id.* at 284-85. Kemper then issued the term life insurance at the nonsmoker rate for both the plaintiff and his wife, and paid the agent a monthly commission. *Id.* at 285. "After his wife's death from breast cancer, plaintiff, as beneficiary of his wife's life insurance policy, sought to collect the policy proceeds." *Id.* at 283. However, Kemper "rescinded the policy and denied plaintiff's claim," asserting that the "wife had concealed from the insurer her smoking of cigarettes in the month period preceding her application, and that had she been truthful it would not have issued a policy at the 'preferred nonsmoker rate.'" *Id.* Plaintiff sued and Kemper moved for summary judgment, "claiming the facts were undisputed that [the wife] falsely answered the application's questions about smoking and tobacco use in the 36 months preceding her application, thus entitling Kemper to rescind [her] life insurance policy." *Id.* at 285. The trial court granted Kemper's motion for summary judgment, which the Court of Appeal affirmed. *Id.* at 283, 286.

The California Supreme Court reversed the lower courts' decisions, citing *Columbia Pictures* for the principle that "[t]he principal is charged with knowledge which his agent acquires before the commencement of the relationship when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal." *Id.* at 288. The Court found that the wife did not conceal information from Kemper about her history of smoking because she had disclosed it to the agent, and that the information was thus imputed to Kemper when the agent became a Kemper agent. *Id.*

To the extent VMware now argues that *O'Riordan* stands for the very broad proposition that all pre-employment knowledge reasonably present in one's mind while working at a corporation is imputable to the corporation, the Court finds that to be an overreading of the case. As the court in *Jefferson Pilot Life Ins. Co. v. Goold*, No. SACV 03-36 VAP (ANx), 2005 WL 5957832, at *2 (C.D. Cal. Nov. 15, 2005) held, "*O'Riordan* did nothing to upset California's long-

1    standing doctrine that information an agent acquires outside the scope of the agent-principal

2    relationship cannot be imputed to the principal. . . .” Instead, *O'Riordan* stands for the proposition

3    that pre-employment knowledge may be imputed to a corporation when the employee was

4    working within the scope of what would eventually become the agent/principal relationship, “even

5    if the agent/principal relationship had not yet been formed.” *Id.* In other words, *O'Riordan* and

6    *Columbia Pictures* (on which *O'Riordan* heavily relied) involved the unique situation in which a

7    true agent, in his capacity as an agent, acquired information central to a later-developed

8    relationship with the principal to whom the agent's knowledge was then imputed. *See O'Riordan*,

9    36 Cal. 4th 281 (insurance agent's knowledge of client's smoking was imputable to insurance

10   agency because the agent obtained that information while working within the course and scope of

11   what would eventually become his agent-principal relationship with the agency); *Columbia*

12   *Pictures*, 87 Cal. App. 2d at 629-30 (where motion picture director's agent was familiar with the

13   standard form of director's contract used by a producer, the director left the details of the contract

14   to the agent, and the agent had the relevant terms of the form agreement in mind during

15   negotiations, director was chargeable with the agent's knowledge of terms of form and bound by

16   them, even though no knowledge was communicated to the director and the knowledge was

17   acquired by the agent prior to his employment.). While *O'Riordan* used facially expansive and

18   definitive language in addressing the true agent-principal circumstance at issue there, the Court

19   finds that applying that case as broadly as VMware urges here would be inconsistent with

20   longstanding and basic California legal principles governing imputation.

21   //

22   //

23   //

24        The Court thus finds *O'Riordan's* discussion of information obtained before the

25   commencement of a relationship inapplicable to the facts of this case. Here, evidence was

26   introduced that two Phoenix employees obtained some knowledge of VMware and its products

27   prior to entering into any sort of relationship with Phoenix, through independent research, and for

28   reasons entirely unrelated to the course and scope of their eventual employment at Phoenix.

4

Accordingly, the Court's instruction does not include VMware's proposed language to the effect that the relevant question is "what these individuals knew while they were at Phoenix," regardless of "whether [they] learned [those facts] the day before [they] started or the day after [they] started." Dkt. No. 341 at 52:24-25, 53:2-3.

**IT IS SO ORDERED.**

Dated:   6/12/2017

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge