UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHOENIX TECHNOLOGIES LTD.,

Plaintiff,

v.

VMWARE, INC.,

Defendant.

Case No.15-cv-01414-HSG

**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL AND DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Re: Dkt. Nos. 462, 467

Plaintiff Phoenix Technologies Ltd. and Defendant VMware, Inc. tried this copyright infringement action before a jury between May 30, 2017 and June 12, 2017.  On June 12, 2017, the jury returned a verdict.  Dkt. No. 450-1.  The jury found that (1) Defendant did not commit copyright infringement; (2) Defendant did not commit contributory copyright infringement; and (3) even if Defendant had committed infringement, Plaintiff waived any such claims against Defendant.  *See* Dkt. No. 438.

Pending before the Court are two sets of post-trial motions: Plaintiff's renewed motion for judgment as a matter of law and motion for a new trial, *see* Dkt. No. 467, and Defendant's motion for attorneys' fees and costs, *see* Dkt. No. 462.  For the reasons set forth below, Plaintiff's motions are **DENIED** and Defendant's motion is **DENIED**.

I.      **BACKGROUND**

Plaintiff initially filed this lawsuit on March 27, 2015.  Dkt. No. 1 ("Complaint" or "Compl.").  The case arose out of Defendant's alleged unauthorized use of certain computer programs that Plaintiff licensed to Defendant "for limited purposes."  *See id.* ¶ 1.  Plaintiff alleged copyright infringement, *id.* ¶¶ 84-97, contributory infringement of copyright, *id.* ¶¶ 98-109, and breach of contract, *id.* ¶¶ 110-17.  The parties filed cross-motions for summary judgment in July

2016.  *See* Dkt. Nos. 121, 129.  On January 6, 2017, the Court denied Plaintiff's motion for summary judgment, and largely denied Defendant's motion for summary judgment, granting it only as to Plaintiff's contract claims.  Dkt. No. 222 at 16-17.

A two-week jury trial was held beginning on May 30, 2017.  On June 12, 2017, the jury reached a verdict after four hours of deliberations, Dkt. No. 450-1, finding that Defendant was not liable for copyright infringement or contributory copyright infringement, and that even if it were, Plaintiff had waived any such claims against Defendant, *see* Dkt. No. 438.

The Court entered judgment on August 3, 2017.  Dkt. No. 458.  On August 17, 2017, Defendant timely filed its motion for attorney's fees and costs pursuant to Civil Local Rule 54-5.  Dkt. No. 462.  On August 31, 2017, Plaintiff timely filed its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), and its motion for a new trial under Federal Rule of Civil Procedure 59.  Dkt. No. 467.

## II.    PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.    Legal Standard

"[A] party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury.  If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)."  *Equal Emp't Opportunity Comm'n v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  In considering a renewed motion for judgment as a matter of law, a court must uphold the jury's verdict if "substantial evidence" supports the jury's conclusion.  *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).  "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence."  *Id.*  The Court must "view all the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the nonmover, and disregard all evidence favorable to the moving party that the jury is not required to believe."  *Castro v. Cnty. of L.A.*, 797 F.3d 654, 662-63 (9th Cir. 2015).  Judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict."  *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 803 (9th Cir. 2009).

United States District Court
Northern District of California

**B.      Discussion**

Plaintiff asserts two primary arguments in support of this motion.  First, it argues that the interpretation of the 2005 Amendment to the Master License Agreement ("MLA") was a question of law for the Court, and never should have been submitted to the jury.  Dkt. No. 467 at 4. Second, Plaintiff argues that there is no evidence to support the jury's verdict regarding the source code location restriction.  *Id.* at 11.

**1.      The Interpretation of the 2005 Amendment**

Plaintiff asserts that because "the 2005 Amendment is not reasonably susceptible to Defendant's interpretation," its interpretation was a question of law for the Court, not a factual one for the jury.  *Id.* at 4.  The Court is not persuaded.

The Court previously addressed this argument in its summary judgment order.  *See* Dkt. No. 222 at 5-11.  When the meaning of contractual language is disputed, a court is required to "provisionally receive[] (without actually admitting) all credible evidence concerning the parties' intentions" to determine if the language is ambiguous—*i.e.*, "reasonably susceptible" to the interpretation urged by either party.  *See Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992).  If a court determines—in light of that provisional evidence—that the contract is "reasonably susceptible" to the parties' proffered interpretation, it then actually admits that evidence and uses it to interpret the contract.  *Kennecott v. Union Oil*, 196 Cal. App. 3d 1179, 189-90 (1987).  "If, after considering the language of the contract and any admissible extrinsic evidence, the meaning of the contract is unambiguous, a court may properly interpret it on a motion for summary judgment"—that is, as a matter of law.  *Miller v. Glen Miller Prods., Inc.*, 454 F.3d 975, 990 (9th Cir. 2006) (applying California contract law).  But, where "the interpretation turns upon the credibility of conflicting extrinsic evidence, or if[,] construing the evidence in the nonmovant's favor, the ambiguity can be resolved consistent with the nonmovant's position, summary judgment is inappropriate."  *Id.* (internal quotation marks omitted).

At summary judgment, the parties set forth conflicting interpretations of the meaning of two terms in the MLA: "standard PC platforms" and the qualifying phrase "with a standard PC operating system."  Considering the provisional extrinsic evidence, the Court found that the

contract's language was "reasonably susceptible" to each party's interpretation, "given the parties' alleged understandings at the time of the 1998 MLA and the 2005 MLA amendment . . . ." Dkt. No. 222 at 7. Both parties proffered extrinsic evidence of their "respective understandings" of the relevant provisions of the 1998 MLA, *id.* at 8, as well as evidence that gave rise to "conflicting inferences" regarding their lead negotiators' understandings of the 2005 Amendment, *id.* at 10. Ultimately, the Court found that the parties' evidence "evince[d] a years-long course of conduct that at times could be read to support each parties' purported interpretation," rendering the contract provision ambiguous—and requiring the jury to assess the "credibility of extrinsic evidence." *See id.* at 10-11. Summary judgment was therefore inappropriate. *See Miller*, 454 F.3d at 990.

Now, in its renewed motion for judgment as a matter of law, Plaintiff incorrectly argues that the 2005 Amendment "preclud[es] VMware's interpretation by its plain terms." *See id.* at 5. Specifically, Plaintiff contends that Defendant "should not have been allowed to argue to the jury that the 2005 Amendment eliminated the licensing restrictions from the parties' prior agreements," citing the language of the agreement. *Id.* But such an interpretation is not self-evident on its face, as evidenced by the parties' submission of conflicting evidence regarding their understanding of the agreement at the relevant time. Despite Plaintiff's contention that "all of the extrinsic evidence introduced at trial supported only Phoenix's interpretation" of the 2005 Amendment, *see* Dkt. No. 467 at 7, the parties plainly submitted conflicting evidence at trial, rendering the issue of interpretation a question of fact for the jury, *see Morey v. Vannucci*, 64 Cal. App. 4th 904, 913 (1998) ("As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract."). For example, Defendant introduced testimony showing that Plaintiff helped it modify the BIOS code specifically to support capabilities beyond the limitations of the 440BX chipset named in the license. *See* Trial Transcript ("Tr.") at 1303:9-15; 1306:20-1307:2; 1308:13-1312:16; 1314:2-1324:9. Defendant also presented testimony at trial showing that in 2006, after the parties executed the Amendment, Plaintiff's CEO assembled a team to review Defendant's fully paid-up licenses ("FPULs")—and ultimately elected not to pursue Defendant because it had a license. *See id.* at 1189:23-1193:23;

United States District Court
Northern District of California

1    Deposition of David Hobbs at 67:7-12 ("Q: Did you ever conclude in your mind that it was

2    inappropriate or improper in any way for VMware to use the Phoenix BIOS in the VMware server

3    products?  A: I don't know why I would have even thought about it.  They had a license.").  Given

4    the totality of the evidence introduced at trial, a reasonable jury could have resolved the factual

5    dispute on this point in Defendant's favor.

6        Plaintiff's contention that "the Court specifically found that the 2005 Amendment did 'not

7    extinguish the parties' previously set limitations,'" thus precluding Defendant's interpretation, is

8    incorrect.  *See* Dkt. No. 467 at 5-6.  Plaintiff provided no citation for this argument, but apparently

9    refers to the Court's order on summary judgment, in which it denied Defendant's request for

10   partial summary judgment.  *See* Dkt. No. 221 at 11-12 ("Because the 2005 amendment stated that

11   '[a]ll rights not expressly granted [to Defendant were] reserved by Phoenix,' the 2005 amendment

12   does not extinguish the parties' previously set limitations, as Defendant suggests.").  In a footnote,

13   Plaintiff acknowledges a critical point regarding the Court's order: "In a telephonic conference

14   before trial, the Court noted that its interpretation of the 2005 Amendment, made in the procedural

15   context of denying VMWare's summary judgment motion, did not constitute a ruling on the issue

16   as a matter of law in Phoenix's favor."  Dkt. No. 467 at 6 n.4.  This remains true.  The order

17   denying *Defendant's* motion for partial summary judgment, at a stage when the Court was

18   required to make all reasonable inferences in Plaintiffs' favor, cannot be used as a basis for finding

19   that, at trial, the interpretation of the 2005 Amendment should not have gone to the jury.[1]

20       At most, Plaintiff's argument amounts to a showing that it was possible for the jury to

21   "draw a contrary conclusion from the same evidence," which is insufficient.  *See Johnson*, 251

22   F.3d at 1227.  The extrinsic evidence cited by the parties in this motion further bolsters the

23   "substantial evidence" supporting the jury's conclusion.  This is, in other words, far from a case in

24

25   _____

     [1] It is undisputed that Plaintiff never moved for summary judgment or summary adjudication on
26   this ground.  *See* Dkt. No. 490 at 11:15-16 (acknowledgment by Plaintiff's counsel at oral
     argument on this motion that "at the point of the summary judgment ruling, the posture was not
27   one in which we were asking you to rule" that summary judgment in Plaintiff's favor was
     warranted as to its interpretation of this language in the 2005 Amendment); *see also* Dkt. No. 121
28   at i (table of contents listing Plaintiff's summary judgment arguments); Dkt. No. 149 at 19 (citing
     extrinsic evidence in opposition to Defendant's motion for summary judgment on this point).

United States District Court
Northern District of California

which "the jury could have relied only on speculation to reach its verdict." *See Lakeside-Scott*, 556 F.3d at 803.  Viewing the evidence in the light most favorable to Defendant—and drawing all reasonable inferences in its favor—the Court finds that judgment as a matter of law as to this issue is not warranted.

### 2.       The Source Code Location Restriction

Plaintiff next asserts that it "presented uncontroverted evidence that VMware violated the source code location restriction in multiple ways, and the jury's disregard of this evidence should be reversed as a matter of law." Dkt. No. 467 at 11.  Plaintiff bases this assertion on the 2000 Amendment, in which "VMware licensed Phoenix's 440BX BIOS source code subject to the restriction that it could use the source code only at the location specified therein . . . and would not distribute the source code to additional sites without first obtaining written permission from Phoenix." *Id.*  But, as discussed above, the jury reasonably could have found that any prior limitations on Defendant's use of the code were extinguished by the 2005 Amendment, rendering moot any evidence that Defendant violated the source code restriction.  Thus, judgment as a matter of law is not warranted on this ground.

Accordingly, Plaintiff's motion for judgment as a matter of law is **DENIED**.

### III.       PLAINTIFF'S MOTION FOR A NEW TRIAL

#### A.       Legal Standard

A court "may, on motion, grant a new trial on all or some of the issues," Fed. R. Civ. P. 59(a), "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice," *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks omitted).  A judge should not grant a new trial unless she or he is "left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (internal quotation marks omitted).  In considering a Rule 59(a) motion, the court "is not required to view the trial evidence in the light most favorable to the verdict.  Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).

United States District Court
Northern District of California

**B.     Discussion**

Plaintiff advances two primary arguments in support of this motion.  First, Plaintiff argues that misconduct by Defendant's counsel "affected the fundamental fairness of the proceeding," and thus warrants a new trial.  Dkt. No. 467 at 12.  Second, Plaintiff argues that the circumstances of the verdict reflect jury confusion, and cast doubt on whether the jury was truly unanimous.  *Id.* at 17-20.

### 1.     Alleged Misconduct by Defendant's Attorneys

Plaintiff argues that "VMware's counsel repeatedly introduced objectionable material in flagrant violation of the Court's orders," which "unfairly prejudiced Phoenix's rights by intentionally injecting matters into trial that the Court expressly found prejudicial to Phoenix." *Id.* at 12.  It points to three such instances, none of which support a finding of misconduct, let alone warrant a new trial.

First, Plaintiff argues that "VMware repeatedly flouted the Court's order prohibiting it from referring to claims in the Complaint that Phoenix was not pursuing at trial." *Id.* at 13.  This misstates the substance of the Court's order, which precluded Defendant from introducing the complaint as an exhibit at trial.  Dkt. No. 326 at 8-9.  In addition, by arguing that Defendant "intentionally inject[ed] matters into trial that the Court *expressly found to be prejudicial to Phoenix*," Dkt. No. 467 at 12 (emphasis added), Plaintiff mischaracterizes the Court's finding. What the Court actually found was that "[t]o the extent the complaint may be marginally relevant as to credibility, the . . . potential to *confuse the jury* and *waste time* by referring to claims Phoenix does not intend to assert at trial substantially outweighs any such relevance."  Dkt. No. 326 at 8 (emphasis added).  Moreover, Plaintiff never attempted to introduce the complaint as an exhibit, referring to it only for impeachment purposes or to refresh a witness's recollection.  *See* Tr. 255:19-256:14; 262:22-263:18; 1040:14-1043:18.

Second, Plaintiff asserts that "VMware's counsel also disregarded the Court's related exclusion of testimony regarding [Plaintiff's equity owner] Marlin Equity's projection of Phoenix's financial performance and Phoenix's performance relative to those projections."  Dkt. No. 467 at 14.  At trial, Plaintiff sought to exclude the testimony of Peter Chung, an employee of

7

1    Marlin Equity, relating to (1) the amount Marlin paid to acquire Plaintiff, (2) Marlin's projections

2    of Plaintiff's financial performance, and (3) Plaintiff's performance relative to Marlin's

3    projections.  Dkt. No. 326 at 13.  The Court granted Plaintiff's motion, finding that "such

4    testimony would waste time, confuse the issues, and mislead the jury."  *Id.*  Plaintiff argues that

5    Defendant's arguments at trial—that Marlin funded this lawsuit to recoup losses from acquiring

6    Plaintiff, Tr. 1675:21-23, and that Marlin's investors were "looking for a reason to demand lots of

7    money" because their investment was underperforming, Tr. 1728:11-13—run afoul of this ruling.

8    But these arguments did not make the specific points excluded by the Court, and thus did not

9    violate the order, and in any event Plaintiff's own evidence opened the door to impeachment

10   regarding Marlin Equity's role.[2]

11          Third, Plaintiff argues that "VMware ignored the Court's order that knowledge of a former

12   Phoenix employee (Matt Durbin) that pre-dated his employment was not attributable to Phoenix."

13   Dkt. No. 467 at 15.  Plaintiff refers to the Court's order regarding Jury Instruction No. 27, in

14   which it explained why it would not give VMware's proffered imputation instruction.  *See* Dkt.

15   No. 435.  Plaintiff argues that this order was effectively a ruling that "Mr. Durbin's pre-

16   employment research on VMware could **not** be imputed to Phoenix for any purpose because it was

17   'entirely unrelated to the course and scope of [his] eventual employment at Phoenix.'"  Dkt. No.

18   485 at 13 (quoting Dkt. No. 435 at 4) (emphasis and brackets in original).  Plaintiff is incorrect:

19   this order simply advised the parties regarding the basis for the jury instruction the Court intended

20   to give, and ultimately did give, concerning the imputation of knowledge to a corporation.

21   Moreover, Phoenix did not object to this portion of VMware's closing argument at the time, and

22   the Court finds no basis to conclude either that the jury did not follow its instructions or that

23   Phoenix was prejudiced by this isolated statement in light of the totality of the record.

24          Finally, Plaintiff asserts that "VMware's counsel also repeatedly referred to confidential

25

26   ───────────────────

27   [2] To the extent Plaintiff argues that Defendant's closing arguments were "entirely unsupported by any evidence," the Court instructed the jury that such arguments are not evidence.  Tr. 1624:20-24 ("[A]s I mentioned to you before the trial started, the closing arguments of the attorneys are not

28   evidence, but rather they are the parties' opportunity to explain to you their view of the evidence and their view of how the evidence should be interpreted.").

United States District Court
Northern District of California

settlement discussions in violation of Federal Rule of Evidence 408." Dkt. No. 467 at 15.  In each instance cited by Plaintiff, however, the Court notes that Plaintiff did not object to Defendant's mention of those discussions.  *See* Tr. 243:24-245:10; 308:11-19; 323:16-20; 455:21-24; 456:19-22; 495:8-496:9; 1675:5-8; 1692:7-20; 1712:14-18; 1724:20-23.  In *Gilbrook v. City of Westminster*, the court held that the defendants, "[b]y failing to make a timely and specific objection on the basis of Rule 408 . . . waived their right to contest the admission of [the contested] testimony on that ground." 177 F.3d 839, 859 (9th Cir. 1999) (citing Federal Rule of Evidence 103(a)(1), which provides that a party may claim the court erroneously admitted evidence if it timely objects and states the grounds for objection).  So too the Court holds here that Plaintiff waived any argument it may have had on Rule 408 grounds because it failed to timely object at trial.

## 2.     Circumstances Surrounding the Verdict

Plaintiff next argues that "[t]he manner in which the jury completed the verdict form . . . suggests that VMware's improper arguments confused the jury and tainted the verdict." Dkt. No. 467 at 17.  In particular, Plaintiff finds it significant that the jury answered Question 4 on the verdict form, despite the form's instruction to "skip the remaining questions" if the jury answered "No" to Questions 1(a)-(d) and 2.  *See* Dkt. No. 438 at 1.  Because the jury answered Question 4 despite answering "No" to Questions 1(a)-(d) and 2, Plaintiff asserts that "the jury was deeply confused on how it was supposed to resolve the claims and defenses in this case." Dkt. No. 467 at 18.  This interpretation is strained.  The more likely explanation is that the jury found that Defendant had not committed copyright infringement—and that even if it had, Plaintiff had waived those claims.  Plaintiff's arguments regarding the jury's confusion are purely speculative, and do not warrant a new trial.

Finally, Plaintiff argues that "the unusual sequence of events in the polling of the jury . . . strongly suggest that verdict was not unanimous as required." *Id.*  Plaintiff argues that Juror No. 1, during the initial polling of the jury, was unable to clearly affirm that his verdict was his "individual verdict in all respects." *Id.* at 18-19 (quoting Tr. 1782:11-19).  The Court sent the jury back for further deliberations thereafter.  Tr. 1782:20-25.  The Court then conducted a second

polling:

> THE COURT: So it has been reported by your foreperson that it was a unanimous verdict. And so we need to know from each of you that this is your verdict, because only if it is the verdict of each of you is it truly unanimous.
>
> So I hope that helps for context. And so with that, Mr. Begley, Juror No. 1, is this your verdict?
>
> JUROR NO. 1: Yes, Your Honor.

Tr. 1785:5-12. The remaining seven jurors also answered affirmatively. *See id.* at 1785:13-1786:9. Juror No. 1's second response was unambiguous, particularly given the Court's admonishment that "we need to know from each of you that *this is your verdict*." *Id.* at 1785:6-7 (emphasis added). Plaintiff's arguments—that omitting the phrase "in all respects" during the second polling led to a misunderstanding by Juror No. 1, or that Juror No. 1 felt pressured to "end the trial and avoid further deliberations"—are again purely speculative. *See* Dkt. No. 467 at 19-20. The circumstances surrounding the verdict therefore do not warrant a new trial.

Plaintiff has thus failed to show that it is entitled to a new trial under Rule 59(a)(1). The Court is not "left with the definite and firm conviction" that any mistake was committed. *See Landes Constr. Co.*, 833 F.2d at 1372. Nor has Plaintiff shown that "the verdict is contrary to the clear weight of the evidence" or "based upon false or injurious evidence," or that a new trial is necessary "to prevent a miscarriage of justice." *See Molski*, 481 F.3d at 729. Accordingly, Plaintiff's motion for a new trial is **DENIED**.

## IV.   DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

Under the Copyright Act, in a copyright action "the court in its discretion may allow the recovery of full costs" or "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.[3] While this broad statutory language "clearly connotes discretion" and "eschews any precise rule or formula for awarding fees," the Supreme Court has established two

---

[3] The Ninth Circuit has interpreted "full costs" to include "otherwise non-taxable costs, including those that lie outside the scope of [28 U.S.C.] § 1920, under § 505." *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005); *see also ExperExchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2010 WL 1881484, at *11 (N.D. Cal. May 10, 2010) (interpreting *Twentieth Century Fox* to hold that parties may recover reasonable expert witness fees under section 505).

United States District Court
Northern District of California

1   important restrictions.  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016)

2   (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994)) (internal punctuation omitted).

> First, a district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment.  Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.

7   *Id.* (citations, internal quotation marks, and brackets omitted).

8        Courts deciding whether to award attorney's fees under section 505 may, in their

9   discretion, consider certain "nonexclusive" factors:  "frivolousness, motivation, objective

10   unreasonableness, and the need in particular circumstances to advance considerations of

11   compensation and deterrence."  *Id.* (citation, internal quotation marks, and brackets omitted).  The

12   objective unreasonableness of a claim, in particular, "carries significant weight," *id.* at 1989, but

13   "can only be an important factor in assessing fee applications—not the controlling one," *id.* at

14   1988.  In the Ninth Circuit, courts may also consider "the degree of success obtained, the purposes

15   of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose

16   an inequitable burden on an impecunious plaintiff."  *Ets-Hokin v. Skyy Spirits*, 323 F.3d 763, 766

17   (9th Cir. 2003).

18        In applying these factors, courts should look to "the large objectives" of the Copyright Act,

19   *see Kirtsaeng*, 136 S. Ct. at 1982 (citation omitted), which "ultimately serves the purpose of

20   enriching the general public through access to creative works," *Fogerty*, 510 U.S. at 527.  "[F]ee

21   awards under § 505 should encourage the types of lawsuits that promote" dual purposes:

22   "encouraging and rewarding authors' creations while also enabling others to build on that work."

23   *Kirtsaeng*, 136 S. Ct. at 1986.

24        The Court accordingly analyzes Defendant's application for an attorney's fee award in

25   light of the relevant factors enumerated by the Supreme Court and the Ninth Circuit, as well as the

26   broader objectives of the Copyright Act.

27       **A.    Degree of Success**

28   Success on the merits weighs in favor of an attorney's fees award more than technical

United States District Court
Northern District of California

1    success.  *Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2016 WL 1258690, at *4

2    (N.D. Cal. Mar. 31, 2016) (citation omitted).  This factor is "not dispositive," however, because

3    "[i]f it was, then prevailing parties would be entitled to attorney fees as a matter of course."

4    *Bisson-Dath v. Sony Computer Entm't Am. Inc.*, No. CV-08-1235 SC, 2012 WL 3025402, at *1

5    (N.D. Cal. July 24, 2012).  Here, the Court agrees that Defendant achieved total success in the

6    case, with the jury "simultaneously rejecting Phoenix's liability claims *and* adopting a key

7    VMware defense."  *See* Dkt. No. 462 (original emphasis).  Thus, while this factor does not decide

8    the issue, it weighs in Defendant's favor.

9    ### B.   Objective Unreasonableness

10   "If a plaintiff has a claim that hinges on disputed facts sufficient to reach a jury, that claim

11   necessarily is reasonable because a jury might decide the case in the plaintiff's favor."  *VMG*

12   *Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016).  Here, Plaintiff's claims largely

13   survived summary judgment.  Dkt. No. 222 at 16.[4]  Even though the Court acknowledged that

14   "Defendant's remaining affirmative defenses [were] substantial, and [that] it [was] far from certain

15   that Plaintiff would be able to overcome them at trial," *id.*, the Court cannot say Plaintiff's claims

16   were objectively unreasonable since they "hinge[d] on disputed facts sufficient to reach a jury,"

17   *see VMG*, 824 F.3d at 887.  Even though Defendant achieved total victory at trial, the fact that a

18   party loses is insufficient to establish objective unreasonableness.  *See Seltzer v. Green Day, Inc.*,

19   725 F.3d 1170, 1181 (9th Cir. 2013).  Thus, this factor—which "carries significant weight" but

20   does not control, *Kirtsaeng*, 136 S. Ct. at 1989—weighs in Plaintiff's favor.

21   The Court does not find persuasive Defendant's argument that *VMG* and *Kirtsaeng*

22   (decided later) are irreconcilable.  Specifically, Defendant argues that "[t]o the extent *VMG*

23   intended to announce a 'precise rule or formula' that all claims to survive summary judgment are

24   *per se* reasonable, without regard to the circumstances or the need to deter weak claims, that

25   aspect of *VMG*'s holding cannot be reconciled with" *Kirtsaeng*'s emphasis on the fact that section

26   505 eschews such rules.  Dkt. No. 462 at 8.  But that aspect of *VMG*'s holding—stating that, as a

---

[4] The Court granted Defendant's motion for summary judgment as to Plaintiff's contract claims because they were time-barred.  Dkt. No. 222 at 16.

United States District Court
Northern District of California

matter of law, a claim is not objectively unreasonable if it survives summary judgment—relates only to the objective reasonableness factor.  That does not amount to a "precise rule or formula for awarding fees," *see Kirtsaeng*, 136 S. Ct. at 1985, because the factors are "nonexclusive" and thus no single one is determinative of the broader question of a party's entitlement to a fee award. Indeed, the Supreme Court has expressly recognized this principle.  *See id.* at 1988 ("[I]n any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones).").[5]  Accordingly, because *VMG* and *Kirtsaeng* are not irreconcilable, the Court is bound by *VMG*.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (stating that only in cases of "clear irreconcilability" can district courts "consider themselves bound by the intervening higher authority and reject the prior opinion of [the Ninth Circuit] as having been effectively overruled").

### C.      Motivation

"The existence of bad faith or an improper motive in bringing or pursuing an action weighs in favor of an award of fees to a prevailing party."  *Epikhin*, 2016 WL 1258690, at *6 (citation, internal quotation marks, and brackets omitted).  Such a finding may be based on "actions that led to the lawsuit, as well as on the conduct of the litigation."  *Id.* (citation and internal quotation marks omitted).  Defendant makes two arguments: first, that Plaintiff "opportunistically trawled decades-old licenses . . . hoping to exploit ambiguities and faded memories" to obtain settlements or damages, and second, that Plaintiff's claim for $110 million in damages "had no connection with reality."  Dkt. No. 462 at 10.  Plaintiff counters that the former assertion "is entirely fabricated," and that a "profit-driven motive for pursuing an infringement claim is **not** an improper motive" justifying an award of attorney's fees.  Dkt. No. 468 at 14-15 (original emphasis).

The Court agrees with Plaintiff and finds no bad faith or improper motive.  The fact that

United States District Court
Northern District of California

---

[5] Defendant also argues that *VMG*'s holding regarding objective unreasonableness "unfairly tilts the availability of fee awards against defendants, who are most likely to move for summary judgment," and thus runs afoul of *Fogerty*'s rule that prevailing plaintiffs and defendants are not to be treated differently.  Dkt. No. 462 at 8.  The Court disagrees.  *Fogerty* requires only that a court considering attorney's fees under section 505 treat prevailing plaintiffs and prevailing defendants the same.  It is not meaningful whether the nature of summary judgment requires the Court to apply that rule more frequently to plaintiffs or defendants.

United States District Court
Northern District of California

1    Plaintiff's "BIOS program long ago lapsed into obscurity" does not, on its own, render worthless

2    its copyright.  *See* Dkt. No. 477 at 12.  A copyright on old software is still a copyright.  Nor would

3    a pecuniary motivation on Plaintiff's part be improper.  *See Eldred v. Ashcroft*, 537 U.S. 186, 212

4    n.18 (2003) ("[C]opyright law *celebrates* the profit motive, recognizing that the incentive to profit

5    from the exploitation of copyrights will redound to the public benefit by resulting in the

6    proliferation of knowledge.") (citation and internal quotation marks omitted) (original emphasis).

7    This factor is therefore neutral.

8            **D.      Deterrence and Compensation**

9            In evaluating the need for deterrence, courts consider the fact that "[d]evelopers of creative

10   works cannot afford to have obstructions placed in their path by claims of infringement that lack a

11   reasonable chance of success . . . ."  *Epikin*, 2016 WL 1258690, at *8 (citation and internal

12   quotation marks omitted).  It is not, however, "the purpose of the Copyright Act to deter litigants

13   from bringing potentially meritorious claims, even though those claims may be unsuccessful."  *Id.*

14   (citation and internal quotation marks omitted).  And, in evaluating the need for compensation,

15   courts consider whether defendants advancing "meritorious copyright defenses" are "encouraged

16   to litigate them to the same extent that plaintiffs are."  *Id.* (citing *Fogerty*, 510 U.S. at 527).

17          As detailed above, the Court does not find that Plaintiff so "lack[ed] a reasonable chance of

18   success" that its infringement suit improperly "obstruct[ed]" Defendant's business.  *See id.*  As for

19   compensation, the Court finds that Defendant was motivated to litigate the claims to the same

20   extent that Plaintiff was—indeed, Defendant admits as much.  *See* Dkt. No. 462 ("Confronted by

21   Phoenix's extreme demands, VMware's choices were to give in and hope for a 'deal' through a

22   settlement or defend the case.  The former would have rewarded Phoenix's abusive behavior.  The

23   latter meant bearing significant litigation costs and burdens, and facing down a $100 million

24   damages claim.  VMware chose to defend itself.").  In *Bisson-Dath*, the court found it instructive

25   that the defendants "had ample incentive to vigorously defend its multibillion dollar [gaming]

26   franchise against claims of infringement."  2012 WL 3025402, at *3.  Defendant had similarly

27   ample incentive here.  Accordingly, because the Court finds that this case does not rise to the level

28   of requiring deterrence or compensation, this factor is neutral.

United States District Court
Northern District of California

1

**E.     Other Factors**

In the Ninth Circuit, courts may also consider "the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Ets-Hokin*, 323 F.3d at 766.

First, the Copyright Act "ultimately serves the purpose of enriching the general public through access to creative works . . . ." *Fogerty*, 510 U.S. at 527.  In furtherance of that purpose, fee awards under section 505 should promote lawsuits that "encourag[e] and reward[] authors' creations while also enabling others to build on that work." *Kirtsaeng*, 136 S. Ct. at 1986.  The Court has already addressed this issue in discussing other factors.  Here, Plaintiff made a claim of infringement that, while ultimately rejected, was not objectively unreasonable.  Defendant, in turn, sought to protect its ability to build on Plaintiff's work.  Defendant prevailed at trial, but success on the merits on its own does not render Plaintiff's claim frivolous.  As a result, the Court finds this factor to be neutral.

Next, as to the chilling effect, Defendant argues that "[d]enying fees to licensees who prove they were fully compliant with their license would have a substantial chilling effect on the industry," and will cause future creators to "think twice" about building on another's work.  Dkt. No. 462 at 14.  Defendant's argument, however, essentially amounts to a statement that if a defendant prevails on the merits, it should receive fees under section 505.  Such a mechanical rule would be inconsistent with the jurisprudence analyzed above.  This factor is also neutral.

Finally, Defendant argues that the equities do not favor Plaintiff because (1) Defendant put Plaintiff "on clear notice that its claims were meritless and that VMware would seek attorney's fees"; and (2) Plaintiff is a "sophisticated technology company represented by experienced counsel," whose owner is "ultimately bearing the cost of this litigation."  Dkt. No. 462 at 14-15.  Defendant further argues that the equities are in its favor, because it "spent millions defending itself against Phoenix's allegations."  *Id.* at 15-16.  Plaintiff counters that the more than $11 million in fees and costs incurred by Defendant "exceed[s] Phoenix's total income in most years."  Dkt. No. 468 at 21-22.  The Court finds that both sides spent a great deal of money in this case to advance their asserted legal interests by way of litigation.  As such, this factor is also neutral.

Accordingly, the Court **DENIES** Defendant's motion for attorney's fees and non-taxable costs.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motions for judgment as a matter of law and a new trial, and **DENIES** Defendant's motion for attorney's fees and non-taxable costs. The judgment entered on August 3, 2017 remains in full effect.

**IT IS SO ORDERED.**

Dated:  2/12/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

16